Walter ADREANI, Plaintiff–Appellant,

v.

FIRST COLONIAL BANKSHARES CORPORATION, Defendant–Appellee.

No. 97–2872.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1998.

Decided Aug. 24, 1998.

I

## BACKGROUND

### A. Facts

In 1987, when the Bank of Highwood hired Mr. Adreani as a Vice President and Branch Manager of Highwood's Libertyville branch, Mr. Adreani was 50 years old. During the course of his employment, Mr. Adreani's principal responsibilities included generating new loan and deposit business, supervising staff and overseeing the administration of the Libertyville branch. Throughout that time period, Highwood's senior management consisted of Dante Greco (President and Chief Executive Officer), Bruce Giangiorgi (Executive Vice President and Chief Operating Officer) and John Brennan (Executive Vice President and Senior Lending Officer). Mr. Adreani reported to Bruce Giangiorgi for operational matters and to John Brennan for lending matters.

Mr. Adreani occasionally had discussions with his superiors concerning ways in which Highwood's performance could be improved through his efforts. He admitted that he was aware that senior management wanted him to increase his level of new business production. However, Mr. Adreani did not consider such discussions to be critical of his performance. In contrast, senior management believed that Mr. Adreani was not generating sufficient new loan business. In late 1993, Giangiorgi told Mr. Adreani to get out of the bank more frequently to call on customers and prospective clients. Giangiorgi gave primary responsibility for operations in the bank to Michael Kelly, a young man hired in 1989 and assigned to assist Mr. Adreani on operations issues. By giving Kelly the main operations duties, Giangiorgi freed Mr. Adreani to devote substantially all of his time to business generation.

Highwood's senior managers were also dissatisfied with Mr. Adreani's tardiness. He admitted that he failed to arrive at the bank by 8:30, despite repeated reminders, but explained that sometimes he was attending meetings. Management was also displeased with Mr. Adreani's poor relationships with

Carey M. Stein, Gary D. Ashman (argued), Ashman & Stein, Chicago, IL, for Plaintiff–Appellant.

Paul T. Fox (argued), Judith L. Hudson, Holleb & Coff, Chicago, IL, for Defendant–Appellee.

Before BAUER, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Walter Adreani was a 57-year-old Vice President and Branch Manager of the Bank of Highwood ("Highwood") when First Colonial Bankshares Corporation ("First Colonial") acquired Highwood on March 31, 1994. In May 1994, Mr. Adreani's position was terminated. Mr. Adreani brought suit against First Colonial under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–633a ("ADEA"), alleging that the termination was based on his age. First Colonial responded that Mr. Adreani lost his job as a result of a company reorganization and reduction in force ("RIF"). When the district court granted summary judgment to First Colonial, Mr. Adreani appealed. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

other bank employees. Brennan and Kelly witnessed Mr. Adreani's use of profanities and his instructing other bank employees in a raised voice from his desk; instead of getting up to speak with an employee, they stated, Mr. Adreani would communicate by calling from his desk across the room. They testified that such behavior was unbusinesslike and demeaning to the employees. On several occasions, Brennan and Giangiorgi counseled Mr. Adreani to refrain from speaking to employees in that manner. Mr. Adreani admitted staying at his desk and speaking to an employee by raising his voice so that he could be heard, but insisted that he was not yelling or using profanities as a routine matter. However, both of Mr. Adreani's supervisors received complaints from employees about Mr. Adreani's conduct—including his handling of bank personnel, his demeanor with female employees and his attitude toward other department supervisors. Giangiorgi viewed his discussions with Mr. Adreani concerning such conduct as "severe reprimands," but Mr. Adreani denies there were such discussions.

Senior management's dissatisfaction with Mr. Adreani's performance was reflected in the relatively small salary increases and bonuses he received, particularly in the last two years of employment. According to First Colonial, Mr. Adreani received a 3% salary increase, compared to the average increase for officers of 4.33%; he also received only a 2.8% bonus, in contrast with the average bonus of 4.6%. Mr. Adreani did not dispute the figures but pointed out that he still received pay raises and bonuses.

In March 1994, seven years after Mr. Adreani was hired, First Colonial acquired the Bank of Highwood.[1] Soon after the acquisition, First Colonial began an economic restructuring; it centralized and consolidated certain functions, including the commercial lending being handled in Highwood's branch facilities. First Colonial intended to diminish the role of the branch manager by centralizing its commercial lending services. It then asked Highwood's senior management staff to recommend a list of ten to twelve employees or positions that could be cut. The High-

wood senior managers compiled a list by considering which banking functions would be consolidated under the new management and by reviewing the performance of various employees. Ultimately, nine employees lost their jobs as a part of this RIF. Both branch manager-lenders, including Mr. Adreani, were among the nine, and both of them were over the age of forty.

Mr. Adreani filed a charge of age discrimination with the Equal Employment Opportunity Commission. When the EEOC issued him a right-to-sue letter, he filed his complaint in the district court.

## B. Decision of the District Court

The district court commented first on Mr. Adreani's loss of his job as a result of the RIF. According to the court, Mr. Adreani did not dispute that Highwood's senior managers considered First Colonial's restructuring and downsizing plans and also assessed their employees' performance of their duties when they determined which employees' jobs would be terminated. The court then noted Mr. Adreani's claim that age, rather than those criteria, played the primary role in his termination. In support of that contention, he stated that Michael Kelly, his assistant, took over his job, including the generation of commercial loans. Upon examination of the record, however, the district court found that Kelly primarily was responsible for the operational management of both bank branches and not for loan generation. It further found that, after First Colonial's reorganization, commercial services were no longer offered at the branch banks and were no longer the duty of a branch manager.

The district court then reviewed First Colonial's claim that Mr. Adreani's performance was deficient. Highwood's senior management asserted that it had included Mr. Adreani among those suggested for job termination specifically because he was not generating enough business, was habitually tardy and maintained poor relationships with other employees. Mr. Adreani disputed those characterizations; he insisted that his job performance was adequate and that any

1. Firstar Corporation subsequently acquired First Colonial in March 1995.

performance discussions he had with Giangiorgi, Greco or Brennan were simply general suggestions about the bank's need for more commercial loans rather than personal criticisms of him.

The district court, following the burden-shifting framework utilized in discrimination cases, examined First Colonial's reasons for terminating Mr. Adreani and concluded that, on their face, the reasons were legitimate and nondiscriminatory. The court then considered Mr. Adreani's evidence that First Colonial's proffered reasons were a pretext for age discrimination. The court noted that Mr. Adreani provided no evidence that his commercial loan generation was sufficient; nor did he show that he met his employer's legitimate expectations. The court determined that he had failed to rebut either First Colonial's assertion that Mr. Adreani did not generate enough new business or its honestly held belief that Mr. Adreani's performance was substandard. Although the court found that there were issues of fact concerning Mr. Adreani's managerial performance and his tardiness, it concluded that the plaintiff had failed to meet his burden of demonstrating pretext because he was unable to rebut First Colonial's nondiscriminatory reason for his termination. With no genuine issue of triable fact before the court as to whether First Colonial's stated reasons were a pretext for age discrimination, the court granted First Colonial's motion for summary judgment.

# II

## DISCUSSION

### A. Summary Judgment

We review de novo a district court's ruling on a motion for summary judgment. Summary judgment is appropriate if the party seeking summary judgment has demonstrated, through its pleadings and other record materials filed with the court—the depositions, answers to interrogatories, admissions and affidavits, for example—that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We view all the facts

in the record and draw all reasonable inferences in favor of the nonmoving party, Mr. Adreani, and we place the burden of demonstrating that there is no genuine issue of material fact on the moving party, First Colonial. However, Mr. Adreani may not rely upon mere allegations; he must set forth specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(e); *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1031 (7th Cir.1998). In employment discrimination cases, we apply the summary judgment standard with rigor because intent and credibility are crucial, often determinative, issues. See *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir.1997).

### B. The Age Discrimination Claim

■ The ADEA prohibits an employer from discharging an individual because of his age. See 29 U.S.C. § 623(a)(1). One bringing a claim under the ADEA "must demonstrate that his age was 'a determining factor'" in his employer's decision to terminate his employment. *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996). Although age need not be the sole reason for the discharge, the claimant must show that, but for his employer's motive to discriminate against him on the basis of his age, he would not have been discharged. See *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 301 (7th Cir. 1996) (stating that "the relevant inquiry is whether age 'tipped the balance,' that is, whether age was a 'but for' cause of the decision to fire the plaintiff"); *Weisbrot v. Medical College of Wisconsin*, 79 F.3d 677, 680 (7th Cir.1996) (using "but for" test, citing cases).

■ An ADEA claimant may prove age discrimination by presenting direct or indirect evidence. In this case, Mr. Adreani has no direct evidence tending to prove that he was discriminated against on the basis of his age. He instead relies on the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for Title VII claims and later adapted for other types of discrimination cases such as ADEA

claims. *See Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 571–72 (7th Cir.1998); Wolf, 77 F.3d at 919. We described that paradigm succinctly in *Testerman*:

> The familiar framework established in McDonnell Douglas necessitates a three-step inquiry. First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging the plaintiff. Finally, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."

98 F.3d at 302–03 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). A plaintiff is successful in presenting a prima facie case when he demonstrates that he was in the protected age group (40 years of age and older, *see* 29 U.S.C. § 631(a)), was performing his job satisfactorily, and was discharged. The plaintiff must also establish that younger employees situated similarly to the plaintiff were treated more favorably. *See Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir.1998); *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir.1995). The Supreme Court has clarified that an ADEA plaintiff who shows that he was replaced by someone "substantially younger" need not prove that the replacement is outside the protected class. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *see also Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996) (per curiam) (discussing *O'Connor*).

When a plaintiff succeeds in demonstrating his prima facie case, there arises a rebuttable presumption of age discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Even though the burden first shifts to the employer to articulate a nondiscriminatory reason for discharging the plaintiff and then shifts back to the plaintiff to show that the employer's proffered explanation is pretextual, the ultimate burden remains with the plaintiff-employee to persuade the trier of fact that the defendant-employer intentionally discriminated against him based upon his age. *See Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996); *Weisbrot*, 79 F.3d at 681.

Here, Mr. Adreani has shown that, at 57, he is in the protected age group and that he was discharged. He claims, but does not establish, that Kelly, the 33 year-old assistant vice president who was assigned to assist Mr. Adreani on operations issues, replaced Mr. Adreani. Concerning the second element of the prima facie case (satisfactory job performance), we note that the same facts and circumstances concerning Mr. Adreani's handling of his duties are the focal point of that issue and the issue of pretext because First Colonial asserts that Mr. Adreani's discharge was based on its reasonable belief that he was not performing satisfactorily. *See Denisi*, 99 F.3d at 864; *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir.1996). Both Mr. Adreani and the bank took up their arguments before this court at the issue of pretext; therefore, we begin there. *See Fairchild*, 147 F.3d 567, 572 (proceeding directly to issue of pretext); *Fuka*, 82 F.3d at 1404 (noting that performance deficiencies can defeat the second element of the prima facie case and also can represent the employer's legitimate justification for its employment decision, then turning to question of whether plaintiff met his burden of showing pretext).

### C. Pretext

First Colonial produced three justifications for its assertion that Mr. Adreani's performance was substandard—his insufficient business generation, poor management style and tardiness. We agree with the district court that they are legitimate nondiscriminatory reasons for discharging Mr. Adreani in the RIF. Under the case law that has interpreted the McDonnell Douglas burden-shifting framework, it is clear that, once the employer produces evidence of a nondiscriminatory reason for its action, the employ-

ee must demonstrate that the employer's proffered reason for its decision was not the actual reason and that it was only a pretext for discrimination.[2] The employee may succeed in his demonstration of pretext by offering evidence that the employer's "ostensible justification is 'unworthy of credence.'" *Testerman*, 98 F.3d at 303 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). To accomplish this proof, the employee must give evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Id.* (*citing Wolf*, 77 F.3d at 919).

> These formulations are simply different ways of recognizing that when the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation: "If the only reason an employer offers for firing an employee is a lie, the inference that the real reason was a forbidden one, such as age, may rationally be drawn." In such circumstances, summary judgment is improper.

*Id.* (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990)). As we explained in *Testerman*, however, an employee discharged in a RIF does not need to produce evidence tending to prove that the employer's explanation was a "lie" in the sense of its being a complete fabrication; instead, he must "establish that age 'tipped the balance' in favor of discharge." *Id.* Because some employees inevitably are discharged in a RIF, the fired employee will succeed in proving pretext when he provides evidence "which would support an inference that, given his shortcomings as an employee, he nevertheless would not have been fired—would not have been ranked below other employees—'but for' his age." *Id.* at 304. As

Judge McKinney of the Southern District of Indiana explained recently:

> Because the burden-shifting method ignores the circumstances surrounding the termination and it presumes the plaintiff was singled out for termination, it is a less efficient method of proof in a RIF case. When an employer must reduce its workforce, employees who were doing fine in their jobs may lose them. If that reduction is coupled with a corporate-wide restructuring and a fundamental change in the way the employer does business, as happened here, the presumptions created by the McDonnell Douglas method of proof are further weakened. For example, in most cases the explanation for the termination is the RIF, which makes it necessary for the Court to concern itself with how the RIF was carried out, rather than what specific reasons were given for an employee's discharge. If the Court is satisfied that the selection process was age-neutral in content and application, then an individual plaintiff will find it more difficult to present enough evidence to create a genuine issue of material fact about the motivation behind his or her individual selection for termination.

*Allard v. Indiana Bell Telephone Co.*, 1 F.Supp.2d 898, 921 (S.D.Ind.1998) (citations, punctuation omitted). Of course, it is not sufficient "for the employee to show that the employer acted incorrectly or undesirably by firing him; the employee must show that the employer did not honestly believe in the reasons it gave for firing him." *Wolf*, 77 F.3d at 919 (citing *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992)). Moreover, the employee must examine each reason given by the employer and must raise an issue of fact regarding the honesty and credibility of each of the reasons.[3]

---

**2.** The Supreme Court assumed that the Title VII burden-shifting McDonnell Douglas framework was fully applicable in the context of employment claims alleging racial discrimination, *see St. Mary's Honor Ctr.*, 509 U.S. at 506 n. 1, 113 S.Ct. 2742, and in the context of age discrimination claims under the ADEA, *see O'Connor*, 517 U.S. at 311, 116 S.Ct. 1307.

**3.** *See Wolf*, 77 F.3d at 920 (establishing that plaintiff-employee "must raise an issue of fact regarding each of the reasons proffered for his dismissal or suffer the affirmance of the district court's grant of summary judgment"); cf. *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995) (setting forth, in Title VII case, that "[t]he fact that some of the reasons were successfully called into question ... does not defeat

### 1.

■ Mr. Adreani does not dispute the fact that First Colonial went through a reduction in force and a reorganization of its banking methods. However, he asserts that there was little evidence that his position was affected by the downsizing; rather, he claims, 33 year-old Kelly replaced him in his job. As Mr. Adreani describes the sequence of events, first Kelly was hired and then was retained when Mr. Adreani was fired. He claims this constitutes age discrimination under our court's decision in *Shager v. Upjohn*, 913 F.2d 398, 400 (7th Cir.1990).

■ In our view, Mr. Adreani's claim cannot survive the scrutiny of *Shager*. *Shager* certainly suggests that the firing of "unwanted workers in two stages-first hiring the replacement worker and then, after a decent interval had elapsed, firing the unwanted one" could constitute age discrimination. 913 F.2d at 400. In that case, the young supervisor hired a young third sales representative anticipating the elimination of one of the three sales reps; even though the 50 year-old Shager far outperformed the younger newly-hired employee, the supervisor replaced Shager with that younger employee a year later. In the case now before us, however, the circumstances are quite different. In the first place, Kelly was hired in 1989 and Mr. Adreani was his supervisor; there is no evidence to suggest that he was hired to take Mr. Adreani's place five years later, in March 1994. In addition, our case takes on a different timbre from its inception because it, unlike *Shager*, is a RIF downsizing case. There is, moreover, the intervening factor of the bank's acquisition, the cause for the subsequent downsizing. Mr. Adreani simply was not replaced by a younger worker in the discriminatory manner seen in *Shager*.

When First Colonial acquired Highwood, it decided to de-emphasize the role of the branch facilities and to centralize commercial lending. According to the bank, Mr.

Adreani's principal responsibility as a commercial lender at a branch facility was intended to be centralized and taken away from the branches. Prior to the acquisition, Mr. Adreani's duties had been bifurcated and Kelly became primarily responsible for the operations of the Libertyville branch so that Mr. Adreani could concentrate his efforts on the generation of new commercial loans.[4] After First Colonial acquired Highwood, the "new commercial lending" function of a branch manager was eliminated at the branches. Kelly testified that he did not assume any substantial responsibilities for loan production; instead, he ran the operations of both the Libertyville and Vernon Hills branches.

Mr. Adreani, who shouldered the burden of proving pretext, did not attempt to show that First Colonial's restructuring, its de-emphasis of branch banks, or its centralization of commercial loan production was a ruse to fire him. *See, e.g., Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572–73 (7th Cir. 1998) (considering plaintiff's claim disputing whether a "reorganization" occurred at all). His only claim is that age discrimination occurred because Kelly took over Mr. Adreani's job and responsibilities. However, Mr. Adreani's deposition statement was equivocal or, at least, uncertain: "As far as I know, [Kelly] was given all the responsibilities that I had, and someone else was hired to take his place." R.26, Ex. A at 97. And that statement was weakened by his subsequent admission that he did not "know for a fact [but] just by talking to people" that Kelly was given substantial responsibility for originating new loans. *Id.* at 97–98. This testimony, which is all the evidence Mr. Adreani proffers to prove that Kelly replaced him, cannot create a genuine issue of triable fact that could defeat summary judgment.

Reductions in force are cost-cutting measures in which "someone has to go." *Fairchild*, 147 F.3d 567, 573. In this case, the two

---

summary judgment if at least one reason ... stands unquestioned").

4. Mr. Adreani disagrees with the bank's description of his job as "bifurcated." In his Rule 12(N) statement, he explains that "Kelly was given

greater responsibility for overseeing daily administrative operations so that Plaintiff could devote more time to securing new loan business, but Adreani remained the senior officer at the Libertyville branch and was chiefly responsible for the operations of such branch." R.18 at ¶ 23.

branch managers were discharged because the role of the branch banks was substantially narrowed and no longer included loan origination—Mr. Adreani's primary responsibility. Mr. Adreani challenges neither the need for downsizing nor the legitimacy of these RIF measures. This court does not examine First Colonial's business decisions; instead, "[o]ur job is to determine 'whether the employer gave an honest explanation of its behavior.'" *Id.* (quoting *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 560 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)). Because Mr. Adreani failed to contest the wisdom of First Colonial's plan to consolidate commercial lending and to diminish the role of branch banks, and because he declined, as well, to argue that First Colonial's RIF decisions were dishonest, unworthy of credence or in any way pretextual, we conclude that no issue of fact has been raised with respect to the elimination of Mr. Adreani's position pursuant to the RIF.

### 2.

 Mr. Adreani concentrates his challenge on First Colonial's assertion that his performance was deficient. In the first place, he notes, First Colonial did not have a system of formal written performance evaluations. Nor was there any other documentary evidence that reflected dissatisfaction with Mr. Adreani's abilities. The only evidence of his substandard performance, he asserts, was testimonial evidence—affidavits and depositions of bank officers and employees—which merely raised issues of fact that should be resolved by trial. Moreover, the demand by First Colonial to "increase business" was made to all management employees and was not a criticism of his own performance.

First Colonial responds first that, although Mr. Adreani's performance as a loan generator and manager was "lackluster," that deficiency was not the most important factor in his discharge under the RIF. The decision to terminate Mr. Adreani's position was a business restructuring decision and was not made until after First Colonial acquired Highwood and the downsizing was planned. Before that acquisition, however, Mr.

Adreani had received oral criticism concerning his need to generate more loan production and to correct both his tardiness and his improper treatment of other bank employees. Mr. Adreani admitted that the criticism had been communicated to him by senior management in each of those categories; he disagreed only about the frequency or seriousness of the criticism.

 Our review of the record establishes that we are not confronted with issues of fact or credibility determinations which must be presented to a jury. An employee's attempt to avoid summary judgment with "an unadorned claim that a jury might not believe [defendant's] explanation for his termination" cannot succeed without "evidence suggesting that [defendant] itself did not honestly believe that explanation." *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir.1997) (citation omitted). In this case, Mr. Adreani failed to proffer evidence to demonstrate that First Colonial did not honestly believe that it dismissed him both because his position at the bank was consolidated elsewhere and because his performance was deficient. *See Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 890 (7th Cir.1997) ("Plaintiffs lose if the company honestly believed in the nondiscriminatory reasons it offered, even if the reasons are foolish or trivial or even baseless."). Only after the undisputed restructuring required the termination of some positions was Mr. Adreani discharged as one whose performance was less desirable than others. *See Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir.1996) (acknowledging that economic downturn which forced firing one of three service engineers caused dismissal of plaintiff "as the least desirable of the three"). As to whether there is a genuine issue about Mr. Adreani's performance deficiencies, the evidence in this case reflects that, even though Mr. Adreani was not given written performance evaluations to indicate that he was falling short of his employer's legitimate expectations, *see Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 865–66 (7th Cir. 1996), he had sufficient warnings from his supervisors to put him on notice that his performance was not satisfactory. According to the record, beginning in 1993, High-

wood's senior management told Mr. Adreani that he needed to increase his loan generation. They encouraged him to visit prospective customers in their places of business. Then Highwood's managers bifurcated Mr. Adreani's duties. They assigned Kelly, a 33 year-old assistant vice president who had been at the Libertyville branch since 1989, to oversee the branch facility's day-to-day operations while Mr. Adreani was out of the branch. This bifurcation occurred three or four months before the sale of the bank to First Colonial.

■ The record also indicates that Mr. Adreani's salary raises and compensation bonuses were below those paid to other Highwood officers in 1992 and 1993, his last years of employment. According to Giangiorgi's affidavit, officer bonuses reflected, in part, the adequacy of and satisfaction with that officer's performance. The district court accepted this evidence of lower salary and bonuses as pretermination evidence that Mr. Adreani's performance was below par. *See* R.30 at 9 ("Even viewing this evidence in the light most favorable to plaintiff, the court must still find that the diminished bonuses offered by First Colonial over a two year period indicate dissatisfaction with Adreani relative to other employees and support the inference that defendant's argument was not created solely for the purposes of defending this lawsuit."). Mr. Adreani offered no evidence ·to contradict Giangiorgi's affidavit testimony concerning Mr. Adreani's below-average salary increases and bonus checks. Instead, he asserted that the information had been created solely to defend this lawsuit and that a jury could find that the reason he received salary increases and bonuses at all was that he was, in fact, performing up to the bank's expectations. We have held that evidence of such a de minimis pay increase does not rebut an employer's legitimate reason for discharge

on grounds of substandard performance. *See Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 379 (7th Cir.1995) (determining that the employee's pay increase, "the lowest possible increase ..., does not rebut the fact that [the employer] considered him the least productive member of that department").

■ Mr. Adreani attempts to raise issues of material fact based on his own perceptions of his performance. However, it is the perception of the decisionmaker, not the employee, that is relevant.[5] *See Denisi,* 99 F.3d at 865 (citing *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337–38 (7th Cir.1991)). Furthermore, we are not concerned with whether the employer's decision was right or wrong; rather, "we are concerned solely with whether the reason for which the [employer] discharged the [employee] was discriminatory." *Giannopoulos,* 109 F.3d at 410. The record before us makes clear that First Colonial articulated reasons for discharging Mr. Adreani that were not forbidden by law, *see id.,* and that its motives in discharging Mr. Adreani, at least in part because of his performance deficiencies, were genuine and honest ones. *See Testerman,* 98 F.3d at 304 (requiring the court "to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives"); *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992) (per curiam) (noting that the "question is not whether the [below-average] ratings were right but whether the employer's description of its reasons is honest"). Mr. Adreani has not presented evidence to show that Highwood's senior management was not credible in proffering this reason for Adreani's termination. Nor has he introduced any specific facts to demonstrate that his loan generation was sufficient or met the bank's legitimate expec-

---

5. Also relevant is the fact that Mr. Adreani was hired by the same management team that fired him and that those decisionmakers were 45, 53 and 58 when they hired him. *See Richter v. Hook–SupeRx,* 142 F.3d 1024, 1032 (7th Cir. 1998) ("While not dispositive, this Court has found it significant that individuals alleged to have discriminated on the basis of age were themselves members of the protected class.").

In addition, we note that Mr. Adreani was 50 when he was hired. *See Wolf,* 77 F.3d at 923–24 (noting that "it is not insignificant that [employee] was initially hired by [employer] at the age of 50—fully ten years into the protected age group. This fact, although not conclusive, is somewhat indicative of [employer's] lack of discriminatory intent.").

tations. Even if Mr. Adreani had succeeded in creating a genuine issue of material fact about his performance ability, he still had no evidence to show that the employer did not honestly believe its proffered reasons for his termination. *See Giannopoulos*, 109 F.3d at 411.

### 3.

■ First Colonial also raised two other justifications for including Mr. Adreani among those employees to be discharged as part of the RIF. It submitted to the district court that his management skills left a great deal to be desired and that he was unacceptably tardy for work. In the district court's view, there was a genuine issue of triable fact with respect to each of these issues. The district court read the record to contain at least a partial denial of the factual allegations underlying First Colonial's assertion of lack of management skills and a general denial by Mr. Adreani of the tardiness allegation. The district court noted that, under the established law of this circuit, the existence of a genuine issue of triable fact with respect to some of the reasons for discharge proffered by the employer is of no consequence as long as at least one reason is uncontested. *See Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir.1996); *Russell v. Acme–Evans Co.*, 51 F.3d 64, 69 (7th Cir.1995). As the district court also recognized, however, we have indicated that this analysis ought not be followed when the grounds that are offered are so intertwined or the pretextual ground for one of them so strong that a reasonable jury, hearing all the proffered grounds, could find for the plaintiff on the discrimination issue. *See Russell*, 51 F.3d at 70. In the view of the district court, this case did not fall within these exceptions. We certainly agree, as we shall discuss at more length shortly, that these other grounds offered by First Colonial are not so strong as to meet the latter part of this exception. We think the issue of whether the defenses are intertwined is somewhat closer; First Colonial's presentation in this court leaves some ambiguity as to whether the Bank believes that Mr. Adreani's failure to meet the Bank's requirements for loan acquisition is a sufficient basis, standing alone, to place him on the list of those to be terminated in the RIF. Therefore, we shall briefly address each of these other justifications.

■ With respect to First Colonial's assertion that Mr. Adreani lacked the requisite management skills and was unacceptably tardy, it is important to note that Mr. Adreani admitted that he called instructions from his desk and raised his voice. He also admitted he sometimes was late, but gave reasons for some, although not all, of his arrivals after 8:30. Therefore, although Mr. Adreani disputes much of the factual basis for First Colonial's proffered reasons, there is still a factual basis for First Colonial's estimations in both areas. In our view, after examination of the record, there is no genuine issue of triable fact on the issue that must be the focus of our inquiry: Whether First Colonial honestly believed that his management style and tardiness were inappropriate and unprofessional and therefore were reasons for his termination. Therefore, even if we must reach First Colonial's alternate justifications for its decision to terminate Mr. Adreani, we believe that summary judgment was appropriate.

### 4.

■ Mr. Adreani does present an exhibit which he claims is evidence of First Colonial's company-wide pattern of discrimination against its over–40 employees. It is a list of First Colonial employees terminated between December 31, 1993 and February 15, 1995. The list, compiled by First Colonial, includes each former employee's name, age and reason for termination. Mr. Adreani concluded that 28 of those employees were discharged because of a RIF, and 18 of the 28 were over the age of 40. First Colonial insists that only the terminations resulting from its acquisition of Highwood are relevant to this case. The district court reviewed the documents and determined that most of those other employees were terminated for performance reasons rather than in a RIF. In addition, it concluded, "even if there is evidence consistent with age discrimination, where no evidence is introduced that age actually motivated plaintiff's termination, the issue is not one

for a jury." R.30 at 12 (citing *Gustovich*, 972 F.2d at 850).

Our court generally has not found that statistical evidence concerning terminated employees, without more, is relevant to our analysis of whether the articulated reasons for discharging *this* plaintiff were pretextual or discriminatory.[6] In this case, Mr. Adreani agrees that statistics by themselves are insufficient to create an inference of discrimination; nevertheless, he claims, his statistics clearly support his claim because they are found in combination with other factors. However, at this point Mr. Adreani has no other evidence of discrimination which this list of terminated employees would bolster. We agree with the district court that the list, reflecting employees discharged for performance rather than downsizing reasons, is too tangential to this case. It in no way tends to support an argument that age actually motivated Mr. Adreani's discharge.

**Conclusion**

In sum, we must conclude that Mr. Adreani has not succeeded in meeting "his ultimate burden [of] establish[ing] that age 'tipped the balance' in favor of discharge." *Testerman*, 98 F.3d at 303. He has not established pretext. He has not raised an issue of fact concerning the genuineness of First Colonial's decision to effect a reduction in force. Nor has he challenged the bank's honestly held belief that his performance was inadequate and that the bank's restructuring and economic downsizing required the loss of his job as branch manager in charge of commercial loan business. Finally, there is no genuine issue of triable fact with respect to the bank's honestly held belief that he possessed unacceptable managerial skills and that he was unacceptably tardy. Accordingly, we affirm the district court's grant of

summary judgment to the defendant First Colonial.

AFFIRMED.

---

**6.** *Cf. Maier v. Lucent Technols., Inc.*, 120 F.3d 730, 735 (7th Cir.1997) (concluding that plaintiff cannot prevail on his ADEA claim by offering a statistically based disparate impact theory but without evidence that the employment decision was based on a discriminatory criterion); *Testerman*, 98 F.3d at 305 (concluding that "the mere fact that the five fired employees fell within the protected class, without more, does nothing to cast doubt upon [the employer's] articulated reasons for discharging [the employee]"); *Gustovich*, 972 F.2d at 850 (concluding that, when plaintiffs cite statistical evidence "consistent with age discrimination, but have presented no evidence that age actually motivated [the employer's] decision to terminate them," age discrimination has not been proven).