**Marion I. KELLEY, Jr., Plaintiff,**

v.

**GOODYEAR TIRE & RUBBER COMPANY, Defendant.**

No. 97–4026–RDR.

United States District Court, D. Kansas.

April 20, 1999.

Alan V. Johnson, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, W. Thomas Stratton, Topeka, KS, for Marion I. Kelley, Jr, plaintiff.

Tammy L. Womack, Jay P. Yancey, Stinson, Mag & Fizzell, P.C., Kansas City, MO, J. Patrick Sullivan, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Deborah A Neubauer, The Goodyear Tire & Rubber Co., Law Department, Akron, OH, for Goodyear Tire and Rubber Company, defendant.

### *MEMORANDUM AND ORDER*

ROGERS, Senior District Judge.

This case is now before the court upon defendant's motion for summary judgment. Plaintiff alleges illegal discrimination and retaliation as reasons for defendant's refusal to hire plaintiff. Defendant claims the record demonstrates that plaintiff could not convince a reasonable jury that he was discriminated or retaliated against. After careful review, the court finds for the reasons which follow that defendant's motion should be granted.[1]

---

1. As part of the court's review, the court considered plaintiff's response to defendant's reply memorandum in support of the motion for summary judgment. Accordingly, plaintiff's motion for leave to respond to the reply memorandum (Doc. No. 74) shall be granted.

FACTS AND FACTUAL CONTENTIONS

The following facts and factual contentions supply the background for the instant motion. In October 1993, plaintiff applied for a position at the Goodyear Tire & Rubber Company plant in Topeka, Kansas. Plaintiff alleges he applied for a warehouse laborer position. Defendant asserts plaintiff's application was considered toward filling any "operative level" position. This difference does not appear to be material. It is undisputed that the position involved unskilled labor.

To obtain the job, outside applicants were required to successfully complete three interviews, although plaintiff was not told that there would be more than one interview. The first interview was a screening interview where defendant attempted to identify applicants who could communicate, solve problems and follow instructions. The job application asked for the highest level of formal education, but education level was not an important factor in hiring for this position. Nor were references considered or checked at the stage of the screening interview.

Mr. S.D. Stotts conducted plaintiff's screening interview for defendant. He rejected plaintiff's application after the screening interview. Plaintiff is an African–American. Although defendant denies this point, for the purposes of this motion the court accepts plaintiff's testimony that during the screening interview he mentioned that he had filed a complaint of discrimination against a previous employer.

Stotts has declared under oath that plaintiff's application was rejected because plaintiff gave a poor interview and because he did not properly complete his employment application. He has elaborated that plaintiff spent too much time at the interview discussing football; that plaintiff gave a "sales pitch" instead of directly answering questions; and that plaintiff was overly nervous. He also stated that plaintiff's application was incomplete because it did not list the high schools plaintiff completed or describe his employment from summer 1977 through 1980 and November 1992 through October 1993. Stotts deduced from plaintiff's employment application that plaintiff may not follow instructions well because job applicants were verbally instructed to list the high schools they attended.

Plaintiff has denied the truth or materiality of all of these points either in his deposition or in an affidavit. He claims that he was not nervous; that he spent most of the interview discussing his work experience and education, not football; and that he was never instructed to list the high schools he attended on his job application. He has further stated that he supplemented his job application with a resumé which outlined his work experience. Plaintiff's job application lists his post-high school education, but not his high school education.

From October 11, 1993 until December 20, 1993, Goodyear interviewed approximately 185 applicants for operative level positions. Approximately 24.4% (32) of the white applicants were rejected because of poor interviews. Approximately 18.9% (7) of the African–American applicants were rejected because of poor interviews. From November 1, 1993 through May 9, 1994, approximately 21.2% of the hourly workers hired by Goodyear were African–American. Plaintiff contends that he was one of eight applicants for a warehouse/production position. Two of the applicants, including plaintiff, were African–American. Both were rejected along with three white applicants. Three other white applicants were not rejected. Defendant asserts that the eight positions referenced by plaintiff were part of the larger pool of applicants from which defendant drew its statistics.

In response to plaintiff's administrative charge in this matter, defendant did not assert to the Kansas Human Rights Com-

mission that plaintiff did not properly complete his employment application.

Stotts wrote a note at the time of plaintiff's interview which states:

Wanted to talk about football rather-

Poor Interview

Poor & Nervous

Knows Jeff Thompson

Incomplete application

Information—lacking High School?

78 thru '80?

Hasn't worked for a year!?

During his deposition, Stotts did not remember the questions which he asked plaintiff during the interview or the details of any conversation about football.

Plaintiff has listed three white applicants for employment (two of whom, like plaintiff, had to pass a screening interview) who were hired in spite of submitting less than complete applications for employment. Defendant has listed four such African–American applicants. Plaintiff has also listed four white applicants for employment who were hired in spite of applications which did not completely account for their time in or out of employment. Defendant has rejoined that all of the white applicants suggested as analogs by plaintiff, unlike plaintiff, did not have poor interviews.

## SUMMARY JUDGMENT STANDARDS

The general guidelines for analyzing summary judgment motions were reviewed by the Tenth Circuit in *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993):

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Russillo v. Scarborough*, 935

F.2d 1167, 1170 (10th Cir.1991). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Applied Genetics Int'l v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990).

## RACE DISCRIMINATION

Defendant asserts that plaintiff has no proof that defendant rejected his job application because of plaintiff's race. Defendant concedes that plaintiff can show a prima facie case of race discrimination. But, defendant contends that summary judgment is warranted because plaintiff cannot rebut defendant's legitimate non-discriminatory reasons for rejecting plaintiff's job application: namely, his poor interview and incomplete employment application. Of course, summary judgment should be denied if, after establishing a prima facie case, plaintiff advances evidence upon which a reasonable jury could conclude that defendant's alleged nondiscriminatory reasons for denying him employment are pretextual. See *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995); *Ingels v. Thiokol Corp.*, 42 F.3d 616, 622 (10th Cir. 1994). Plaintiff could also avoid summary judgment by providing direct evi-

dence of an illegal discriminatory motive. *Randle,* 69 F.3d at 453. However, in this case, it is admitted that plaintiff has no such evidence.

Plaintiff offers four arguments to cast doubt upon defendant's contention that plaintiff was not hired because of a poor interview. First, plaintiff testified that he was not nervous and did not spend much time discussing football. Second, plaintiff notes that Stotts' memory of the interview is vague. Third, plaintiff asserts that Stotts' handwritten notes "are not free from suspicion" because they were not submitted by defendant to the Kansas Human Rights Commission after plaintiff filed his administrative complaint. Finally, plaintiff notes that defendant's characterization of plaintiff's interview was subjective.

To avoid summary judgment, plaintiff must produce specific facts to show a genuine issue of fact as to pretext. *Branson v. Price River Coal Co.,* 853 F.2d 768, 771–72 (10th Cir.1988). Mere assertions and conjecture are not enough to survive summary judgment. *Id.;* see also, *Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159, 1170 (10th Cir.) *cert. denied,* —— U.S. ——, 119 S.Ct. 617, 142 L.Ed.2d 556 (1998).

■ None of the arguments advanced by plaintiff are sufficient to produce an issue of fact as to pretext. Plaintiff's assertions with regard to his interview merely invite the court or a jury to adopt plaintiff's subjective characterization over defendant's subjective characterization of the interview. They provide only opinion or conjecture, not specific grounds or facts, to support a claim of pretext. It is well-accepted that a court must not substitute the business judgment of an employer with the judgment of a job applicant. *Branson,* 853 F.2d at 772; see also, *Furr v. Seagate Technology, Inc.,* 82 F.3d 980, 988 (10th Cir.) *cert. denied,* 519 U.S. 1056, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997) ("It is the manager's perception of the employee's performance that is relevant, not plaintiff's

subjective evaluation ..."); *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 747 (10th Cir.1991); *Stephens v. City of Topeka,* 33 F.Supp.2d 947, 960 (D.Kan.1999); *Thiessen v. General Electric Capital Corp.,* 13 F.Supp.2d 1131, 1151 (D.Kan.1998). Deference to business judgment is particularly proper when a job applicant offers only self-serving assessment of a job interview in rejoinder to the employer's perspective.

■ Stotts' failure to recall the specifics of a job interview more than four years after it occurred is not surprising since he performs many job interviews. Nor is the absence of specific recollection condemning in light of the handwritten notes made at the time of the interview. Plaintiff speculates that the notes may have been fabricated after an administrative charge was filed in this case. But nothing more than conjecture is offered to support this idea.

This conjecture is based on some confusion regarding when defendant was interviewed for the position. Initially, the parties agreed the date was November 6, 1993. However, because this was a Saturday, it does not appear correct. The better evidence suggests that defendant was interviewed on October 29, 1993. But, one of the copies of defendant's employment application was signed by Stotts as the interviewer and dated by him October 29, *1994,* which is several months after plaintiff filed his administrative charge in this matter. Stotts has explained that he may have misdated his signature because he was working on budgets for 1994 at the time. In the court's opinion, this confusion does not raise an issue as to whether the notes Stotts made during the interview were fabricated for the purposes of this litigation, which was filed three to four years after the above-mentioned dates. It does not constitute evidence sufficient to raise an issue of fact as to whether defendant's alleged reasons for rejecting plaintiff's job application are pretextual.

Defendant has also cited plaintiff's "incomplete" job application as a grounds for

not hiring plaintiff. Plaintiff contends this is a pretextual reason because defendant did not mention that reason to the Kansas Human Rights Commission. Support for defendant's position is contained in the Stotts' handwritten note and his deposition. Furthermore, this explanation for rejecting plaintiff's application is not inconsistent with the claim that plaintiff had a poor interview. We do not believe defendant's failure to raise the issue administratively provides more than speculative grounds to find pretext. See *Balut v. Loral Electronic Systems*, 988 F.Supp. 339, 351 (S.D.N.Y.1997) *aff'd*, 166 F.3d 1 (2nd Cir.1998).

Plaintiff further asserts that he was never instructed to list his high school on his application and that Stotts admitted he knew plaintiff graduated from high school. While we accept this as true, it does not account for plaintiff's failure to list his most recent work experience. Nor does it directly rebut that Stotts believed plaintiff had been verbally instructed to list his high school and therefore thought plaintiff failed to follow an instruction.

Plaintiff asserts it is most significant that white applicants for employment were accepted even though they submitted incomplete applications. However, so were other African–American applicants. Moreover, plaintiff has not produced examples of white applicants who where hired in spite of incomplete applications in addition to poor interviews. Therefore, the court does not find plaintiff's comparison with other job applicants provides evidence of pretext. See *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir.1998) (plaintiff must examine and raise an issue of fact as to each alleged nondiscriminatory reason for job action).

■ On the whole, the statistical evidence supports defendant's motion for summary judgment. Although the job interview process was a subjective one, the statistical evidence does not show that whites were favored over African–Americans in the screening interviews. Signifi-

cant numbers of whites and African–Americans were rejected for having poor interviews. Moreover, plaintiff's attempt to isolate and compare the eight applicants for the warehouse/production position is not persuasive for two reasons. First, the evidence before the court is that all applicants were considered for every operative level position. Therefore, plaintiff was considered with a much larger pool of applicants, not just eight. Second, a sample of eight is too small to provide reliable results. See *Fallis*, 944 F.2d at 746 (group of nine is too small to provide reliable statistical results); *Pitre v. Western Electric Co.*, 843 F.2d 1262, 1267 (10th Cir. 1988); *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir.1986).

In summary, plaintiff has failed to produce specific facts upon which a reasonable jury could conclude that defendant's alleged nondiscriminatory reasons for denying him employment are a pretext for race discrimination.

RETALIATION

■ To establish a prima facie case of unlawful retaliation in most cases, a plaintiff must demonstrate: 1) protected opposition to discrimination or participation in a proceeding arising from discrimination; 2) adverse action by the employer contemporaneous with or subsequent to the protected activity; and 3) a causal connection between such activity and the employer's action. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993). If plaintiff demonstrates a prima facie case, the burden of production shifts to defendant to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Garcia–Harding v. Bank Midwest*, 964 F.Supp. 1492, 1510 (D.Kan.1997). If defendant does so, the burden shifts back to the plaintiff to show that the articulated reason was a mere pretext for discrimination. *Id.*

■ Defendant asserts that plaintiff has failed to demonstrate a prima facie case in the relatively unique situation of an alleged retaliatory failure to hire because

plaintiff relies only upon temporal proximity to prove causation. Defendant contends that temporal proximity is not probative of causation in this case because the decision to hire is usually made shortly after an employment interview regardless of any mention of prior protected activity. Defendant's point appears well taken. See *Fahie v. New York City Dept. of Correction,* 737 F.Supp. 15, 17 (S.D.N.Y.1990); see also, *Clay v. Interstate National Corp.,* 900 F.Supp. 981, 993 (N.D.Ill.1995), *aff'd,* 124 F.3d 203 (7th Cir.1997).

But, even if a prima facie case of retaliation was established by plaintiff, defendant has satisfied its burden of articulating a legitimate nonretaliatory reason for not hiring plaintiff. As discussed earlier, the court finds that plaintiff has failed to demonstrate the capacity to convince a reasonable jury that both of defendant's nonretaliatory reasons for denying plaintiff's application for employment are untrue or a pretext for illegal discrimination or retaliation.

CONCLUSION

In conclusion, for the above-stated reasons, defendant's motion for summary judgment shall be granted.

**IT IS SO ORDERED.**