Eddie McLAURIN, Plaintiff–Appellant,

v.

FEDERAL EXPRESS
CORPORATION, Defendant–Appellee.

No. 99–2445.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 2000.

Decided Jan. 16, 2001.

Before CUDAHY, COFFEY, ROVNER,
Circuit Judges.

ORDER

Eddie McLaurin was fired from his management position at Federal Express ("FedEx") for "leadership failure" under the company's Acceptable Conduct Policy. McLaurin sued, claiming race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The district court granted summary judgment to FedEx. McLaurin now appeals, arguing that the district court erred when it held that he did not satisfy his prima facie burden under the test articulated in *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and when it held that there was not a genuine issue of material fact as to whether FedEx's reason for firing him was pretext for discrimination. We affirm.

McLaurin, who is African–American, began working for FedEx in 1989. He worked his way up through the ranks and ultimately became Operations Manger of the South Loop Chicago Station (the "CGX station") in June 1995. He kept that position until his discharge in November 1996. As a manager, McLaurin participated in management training through FedEx and learned during training that he needed to consistently perform in accordance with FedEx policies and procedures. He also understood the importance of FedEx's delivery commitments.

Donald Mock, a Caucasian, was McLaurin's supervisor from September 1996 until November 1996. During that period McLaurin worked the evening shift, which lasted from noon until 1:30 a.m. In his capacity as Operations Manager, he was responsible for overseeing the unloading and sorting of arriving freight for reloading and transport to the airport and on to its final destination. During his shift McLaurin worked with another Operations Manager, James Sims, a Caucasian who also reported to Mock. Sims's duties differed somewhat from McLaurin's; Sims supervised the courier work group, which picked up packages from FedEx drop boxes and other customer locations for delivery at CGX. Nevertheless, as managers both Sims and McLaurin bore responsibility for the freight at CGX.

On November 7, 1996, freight arrived late at the station. As a result, CGX employees had to scramble to get all of the freight checked in and reloaded to the appropriate vans bound for O'Hare in time for the last departing FedEx flights. At approximately 10:15 p.m., after the main van had left for O'Hare, a CGX employee discovered that one bag of P1 freight had been left behind. P1 freight is freight with a next-day, 10:30 a.m. delivery commitment. The FedEx flight for which the P1 freight was destined was scheduled to depart from O'Hare at 11:15 p.m. McLaurin had primary responsibility for ensuring that freight was routed and loaded properly; however, Sims, as a manager, also shared responsibility for freight decisions.

McLaurin and Sims discussed the options with respect to the late P1 freight. One option was to load it onto a different truck leaving for O'Hare with lesser-priority freight bound for a different destination. McLaurin ruled out this possibility because he feared the shuttle driver would not know where to take the P1 freight and it would get missorted or misplaced. Other options included McLaurin or Sims driving the P1 freight to the airport personally or, alternatively, sending it out on an expedited basis the next morning. But Sims had forgotten his FedEx identification badge, and so he would not be able to get onto the ramp at the airport. McLaurin insists he could not go to the airport himself because he was busy investigating a vehicle accident at CGX; FedEx says he did not investigate the accident that night. McLaurin decided to hold the P1 freight until the next morning; it was not delivered by the 10:30 a.m. deadline.

Had McLaurin sent the P1 freight to O'Hare that night, and had the tardy delivery resulted in a flight delay, the CGX station under his command would have received an "F-delay." An F-delay occurs when a FedEx flight is delayed because a station sent late freight to the airport. These delays are charged to the station causing them, and they have negative implications for both the station and managers responsible.

After this incident, McLaurin did not inform FedEx employees at O'Hare that certain items of expected freight would be missing that night, nor did he record the fact on his nightly reports provided to Mock. Indeed, McLaurin instructed one of his employees to omit the information from her report to Mock. Mock discovered the mishandled freight the next day when FedEx employees at O'Hare advised they found 95 improperly scanned P1 documents and asked whether CGX had overlooked the items the night before.

After learning that McLaurin had mishandled the P1 freight, Mock suspended him with pay while investigating a possible violation of FedEx's Acceptable Conduct Policy. During the ten-day suspension, Mock assumed McLaurin's duties to some extent. Between November 8 and 18, Mock inquired extensively into the cause of the delayed freight. He interviewed McLaurin, Sims and other CGX employees and reviewed the relevant employee recap reports. Mock discovered that Sims had also played a role in the November 7 incident. On November 11, while still reviewing McLaurin's conduct, Mock issued Sims a performance reminder for violating the company's Performance Improvement Policy, an action that because of earlier violations resulted in Sims's termination from FedEx on November 18, 1996. After concluding his investigation, Mock met with his boss and FedEx personnel representatives and concluded that McLaurin had violated the Acceptable Conduct Policy when he exhibited "leadership failure" in handling the P1 freight incident. McLaurin, like Sims, was fired on November 18, 1996. McLaurin unsuccessfully appealed the termination through all three levels of the FedEx grievance process.

We review the grant of summary judgment *de novo*, and view the facts in the record and draw all reasonable inferences in favor of McLaurin. *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 964–65 (7th Cir.1998). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 393 (7th Cir.1998); Fed.R.Civ.P. 56(c).

McLaurin did not provide direct evidence of race discrimination. He instead relied on the indirect, burden-shifting formula articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), under which a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination; if the plaintiff does so, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of legitimate, nondiscriminatory reasons for discharging the plaintiff. *Adreani*, 154 F.3d at 393. The plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reasons were in reality pretext for discrimination. *Id.* To make out a prima facie case under the *McDonnell Douglas* framework, McLaurin was required to show that he is a member of a protected class, that he suffered an adverse employment action, that he was meeting FedEx's legitimate performance expectations, and that FedEx treated similarly situated employees outside the protected class more favorably. *Stalter v. Wal–Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir.1999).

█ FedEx of course never disputed that McLaurin is a member of a protected class or that he suffered an adverse employment action. But FedEx insisted that McLaurin was not meeting its legitimate expectations, and that he could not establish that similarly situated coworkers outside the protected class were treated more

favorably. The district court agreed as to the second point but held that McLaurin produced sufficient evidence to raise a genuine dispute about whether he was meeting FedEx's performance expectations when he was fired. In this appeal FedEx reasserts its position that McLaurin did not muster enough evidence to demonstrate a real factual dispute about what the company characterizes as substandard performance, while McLaurin argues that he met his prima facie burden. We need not reach these issues, however, because McLaurin failed to demonstrate a genuine factual dispute concerning his position that FedEx's reason for firing him was pretext for intentional discrimination.

■■ Pretext means "a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995); *see also Jordan v. Summers,* 205 F.3d 337, 343 (7th Cir.2000) (to show pretext, plaintiff must present evidence that each of the proffered reasons is either a lie or completely lacking a factual basis). In support of his prima facie case McLaurin principally argued that Sims was treated more favorably; he also asserts on appeal that such evidence is probative of pretext. It is true that if similarly situated employees outside the protected class engaged in similar conduct but were treated more favorably, such evidence may support a finding of pretext, *see McDonnell Douglas,* 411 U.S. at 803; *Essex v. United Parcel Service, Inc.,* 111 F.3d 1304, 1311 (7th Cir.1997); but in order to succeed, the plaintiff must show that such similarly situated employees were engaged in acts of comparable seriousness. *Morrow v. Wal–Mart Stores, Inc.,* 152 F.3d 559, 564 (7th Cir.1998); *Hiatt v. Rockwell, Int'l Corp.,* 26 F.3d 761, 770–71 (7th Cir.1994) (plaintiff fails to prove pretext when other employees alleged to be similarly situated either engaged in different conduct or conduct of

less seriousness). We do not believe that FedEx's treatment of McLaurin, when contrasted with its treatment of Sims, casts doubt on the company's stated reason for terminating McLaurin. McLaurin and Sims were similarly situated in that they shared job titles, had equal responsibility for moving the freight, and were both supervised by Mock. But it is undisputed that their conduct on November 7 and their specific involvement in the incident was significantly different. Not only did McLaurin fail to expedite the overlooked freight, but he also attempted to cover up his actions by ordering a subordinate to falsify a report to his own supervisor. Although Sims was also responsible for the freight that night, he did not attempt to mislead Mock or anyone else about the incident. Afterwards, FedEx conducted an investigation, interviewed witnesses, and concluded that "McLaurin's decision not to move the P1 freight to the ramp at the earliest opportunity, and the lack of communication of the exception with either the ramp or [Mock] constitutes leadership failure" in violation of FedEx's Acceptable Conduct Policy. McLaurin offered no evidence to show that FedEx's reason was a lie or lacked a factual basis and we do not sit as a "super-personnel" department that reexamines an employer's facially legitimate employment decisions. *Foster v. Arthur Andersen, LLP,* 168 F.3d 1029, 1035 (7th Cir.1999). There is no genuine issue of material fact on this point and, therefore, the district court properly granted summary judgment to FedEx.

AFFIRMED