**Carl R. PITASI, Plaintiff–Appellant,**

v.

**GARTNER GROUP, INCORPORATED, Defendant–Appellee.**

No. 98–1496.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1998.

Decided July 23, 1999.

Rick Allen White, Robert G. Epsteen (argued), Chicago, IL, for Plaintiff-Appellant.

Nancy G. Ross, Eric E. Mennel (argued), McDermott, Will & Emery, Chicago, IL, for Defendant-Appellee.

1. Research analysts at Gartner usually are hired for their substantial business and technological experience relevant to information technology, Mr. Pitasi explained. However, he found it significant and disturbing that a new model hiring program was established in

Before POSNER, Chief Judge, and RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

Carl R. Pitasi was employed by Gartner Group, Inc. ("Gartner") from August 1988 until January 3, 1996. His employment was terminated when he was 52 years old. Mr. Pitasi brought suit in federal court against Gartner under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–633a ("ADEA"), alleging that he had been dismissed because of his age. He now appeals the district court's grant of Gartner's motion for summary judgment. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

Gartner is a company that provides research and consulting services for business clients involved in information technology. Research analysts like Mr. Pitasi write and edit research notes on specific topics and provide subject-specific advisory services to Gartner clients.[1] Mr. Pitasi worked in the Networking and Electronic Workplace Group ("NEW Group") under Michael Schumer, Senior Vice President and Research Group Director. Mr. Pitasi's principal responsibility was to serve as Core Topic Leader in the area of Telecommunications in Newly Industrialized Countries, writing research notes and responding to client inquiries about the subject. He also had a general knowledge in other core topic areas.

In September 1995, Schumer gave Mr. Pitasi the added new assignment of Research Integrator for the NEW Group. In

1992 by Manny Fernandez, the CEO of Gartner. The program established the recruitment of recent college graduates in the belief that they might be more productive than older, albeit more experienced, researchers.

this position, Mr. Pitasi was to work with other Research Integrators to ensure that Gartner was taking consistent positions with respect to information technology. This was a "pet project" of Adam Rin, Senior Vice President of Worldwide Technology Services,[2] who was Schumer's boss. Schumer therefore considered the assignment to be quite important, and Mr. Pitasi regarded it as a high-level, high-profile assignment given to him in recognition of his excellent performance as an analyst. Over the next several months, Mr. Pitasi spent considerable time preparing a position description of his new job. He claims that, at the time of his termination, Gartner had not adopted the position description and Mr. Pitasi had not yet assumed any of his new duties as an Integrator.

Nevertheless, during those months, Mr. Pitasi also expressed dissatisfaction with his new role. He told Schumer and other colleagues that he thought the job was merely administrative and that he was concerned that the Integrators could get stuck doing everyone's odd project. According to Gartner, Mr. Pitasi squandered this opportunity to increase his value at Gartner. Schumer also heard that Mr. Pitasi was actively pursuing other employment and had refused Gartner's request to sign a non-competition agreement. However, Schumer's performance assessment of Mr. Pitasi, made on November 9, 1995, was positive and without criticism; it commended Mr. Pitasi particularly on his covering communications in newly industrialized countries and his speaking to CIOs and CEOs about networking.

During this same time frame, in the fall of 1995, Schumer was interviewing applicants for another high-level position within the NEW Group, that of Core Topic Leader for Wireless Communications. The job had been vacant since August 1995. In October 1995, Schumer hired Robert Egan, an expert in wireless communications for nearly 20 years, to fill the position starting in January 1996. Also in October 1995, Gartner entered into serious negotiations to acquire a competitor, Dataquest Corporation. According to Gartner, its acquisition of Dataquest required, if it was to be successful, a decrease in costs by $8 million per year. Gartner determined that the decreased costs would come from eliminating redundancies in staffing and through consolidation of the infrastructure of the two companies. The company decided to reduce its workforce by eliminating positions where there were overlapping responsibilities, starting with Dataquest employees but including Gartner employees whose positions had become redundant due to the merger of Gartner and Dataquest. The company also reviewed other employee positions that could be eliminated to cut costs.[3] In carrying out the reduction-in-force ("RIF"), Schumer identified Mr. Pitasi (age 52) and Rory Staunton (age 40) as two analysts whose job duties could be absorbed by other employees. The company decided to abolish Mr. Pitasi's position because his knowledge of the contributor areas was not deep enough to be useful to clients and because he seemed dissatisfied with the role of Research Integrator. Mr. Pitasi disagrees with his supervisor Schumer's assessment. He asserts that he was considered the foremost authority at Gartner on the topic of wireless communication and that most client inquiries were referred to him in this area. He also claimed to have hands-on experience on the topic of channel extenders.

Those whose positions were identified to be eliminated were offered severance pay based on the employee's number of years of service and on the employee's age. On

2. Worldwide Technology Services is a large division of Gartner, a subset of which is the Research and Advisory Services Group ("RAS") which Schumer directs. Within RAS is the NEW Group in which Mr. Pitasi worked.

3. By eliminating Mr. Pitasi's position, Gartner would save over $130,000 in his salary alone.

December 3 or 4, 1995, Schumer offered a separation package to Mr. Pitasi. According to Pitasi, Schumer asked him, "What would you think if we gave you early retirement, with some extra compensation because of your age?" R.56, Ex.1 at ¶ 44. Mr. Pitasi, surprised, said, "Make me an offer."[4] The next day, via e-mail, Schumer sent him a Mutual Separation Agreement, the terms of which included extra compensation for being over 40 years of age and a release of his claims against Gartner under the ADEA. The agreement stated that his position was being eliminated due to a reorganization in the marketing department. When Mr. Pitasi called Schumer about this mistaken statement (reminding Schumer that he was in the Research Advisory Group, not marketing, and that there were no overlapping research functions between Gartner and Dataquest), Schumer explained that Gartner's recent acquisition of Dataquest had led to the elimination of positions in their marketing organizations; however, the reference in Mr. Pitasi's letter was erroneous and would be changed in the final draft of the Agreement, Schumer stated.

Mr. Pitasi then told Schumer that he did not want to retire and that the terms of Gartner's proposed agreement were not acceptable, but that he would make a counter-proposal. Gartner rejected the counter-proposal. Following Mr. Pitasi's rejection of the severance package, Gartner terminated his employment effective January 3, 1996. According to Gartner, Mr. Pitasi was allowed to continue working until that date, at his request, so that he might take advantage of stock benefits that would vest at the beginning of the year.

Jerome Cooperman, who is 4 months older than Mr. Pitasi, took over Pitasi's primary duties as Core Topic Leader for newly industrialized countries, and Ken McGee, 8 years younger than Mr. Pitasi, was assigned the job of Research Integrator. The day Mr. Pitasi was terminated, Robert Egan, age 41, was hired as a research analyst in wireless communications, one of the areas in which Mr. Pitasi was a core topic contributor.[5]

**B. Decision of the District Court**

The district court concluded that Mr. Pitasi failed to prove age discrimination and granted summary judgment to his employer Gartner. It found first that the supervisor's statement, "What would you think if we gave you an early retirement," made on only one occasion, was insufficient direct evidence of discriminatory intent.

Under the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the court determined that Mr. Pitasi did not meet the fourth element of the prima facie case—establishing that younger employees were treated more favorably. Although Mr. Pitasi claimed that Robert Egan, 11 years younger than he, was his replacement, there is no evidence of that other than Mr. Pitasi's own affidavit. Egan was hired as a research analyst in wireless communications,

---

**4.** The parties disagree about many details of this telephone discussion. According to Schumer, even though Mr. Pitasi's position was identified as redundant, it was not irrevocably decided that he would lose his job. Schumer claims he told Mr. Pitasi that he was aware that Mr. Pitasi was dissatisfied with his role at Gartner and was seeking other employment. When he offered the separation package, Mr. Pitasi did not deny being unhappy or dissatisfied with his Research Integrator role. Instead, he responded, "Make me an offer." He later told Schumer that he was close to having another job with a client of Gartner's. Mr. Pitasi denies searching for

another job before the severance offer was made. However, an employee of NetForce, by affidavit, stated that Mr. Pitasi had begun discussions with NetForce in mid or late November.

**5.** Mr. Pitasi has filed a motion for correction or modification of the appellate record. He seeks to include a performance assessment of Robert Egan in it. Because the material was not introduced in the district court, it is not part of the appellate record. We therefore deny the appellant's motion.

one of Mr. Pitasi's contributing areas but not his primary responsibility. However, Mr. Pitasi admitted that Cooperman (4 months older) was given his position of Core Topic Leader for newly industrialized countries and McGee (8 years younger) was assigned the position of Research Integrator. Because the difference in the ages of Mr. Pitasi and those two men was less than 10 years, the court held, that difference is not significant enough to infer discriminatory intent, for he was not replaced by a significantly younger person.

The district court also determined that Mr. Pitasi did not establish the fourth element of a prima facie case as it is defined in RIF cases: that younger employees situated similarly to him were treated more favorably. Although Mr. Pitasi refers to Gartner's hiring of analysts "fresh out" of college, he does not identify any younger, equally situated individuals who were retained by Gartner. The district court concluded that Mr. Pitasi failed to establish his prima facie case of discrimination and granted the defendant's motion for summary judgment.

## II

### DISCUSSION

■ We conduct a plenary review of the district court's summary judgment determination, reviewing the record and all reasonable inferences drawn from it in the light most favorable to Mr. Pitasi, the nonmovant. In employment discrimination cases, intent and credibility are central factors in the determination; for that reason, we apply the summary judgment standard with "added rigor" in those cases. *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999) (quoting *Huff v. UARCO, Inc.,* 122 F.3d 374, 380 (7th Cir.1997)) (internal quotations omitted).

■ "The ADEA 'broadly prohibits arbitrary discrimination in the workplace based on age.'" *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 120, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (quoting *Lorillard v. Pons,* 434 U.S. 575, 577, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)); *see* 29 U.S.C. § 623(a) ("It is unlawful for an employer ... to discharge any individual ... because of such individual's age."). An employee like Mr. Pitasi may prevail in his ADEA-based claim against his employer if he shows that his termination would not have occurred "but for" his employer's age-based discriminatory motive. *Miller,* 168 F.3d at 312; *see also Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 393 (7th Cir.1998). An employee may establish a claim of age discrimination in employment through direct or indirect evidence. Mr. Pitasi asserts that he has both types of evidence; we shall examine each of his claims.

### A. Direct Evidence of Age Discrimination

■ Under the direct method of proof, a plaintiff may present direct evidence—evidence which, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 443 (7th Cir.1997) (quoting *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997)) (internal quotation marks omitted). It is direct evidence that can be interpreted as an acknowledgment of a defendant employer's discriminatory intent. *See Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). This evidence "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Cowan,* 123 F.3d at 443 (quoting *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 569 (7th Cir. 1989)) (internal quotation marks omitted).

■ Mr. Pitasi's direct evidence of age discrimination is Schumer's question to him: "What would you think if we gave you early retirement, with some extra compensation because of your age?" According to Mr. Pitasi, his supervisor at-

tempted to coerce him to take early retirement by offering extra compensation because of his age and, at the same time, by requiring him to release Gartner from any claim he might have under the ADEA. Schumer denies making such a suggestion; even if he had, Gartner submits, it would not be probative of age-based animus: The statement does not reflect that Mr. Pitasi's age played a role in the decision to terminate him or that he would have kept the position if he were younger.

We agree with the district court that, in this context, the employer's "suggestion of retirement would not alone give rise to an inference of discrimination." *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir.1997); *see Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir.1999) (concluding that comment about retirement, even when combined with other critical remarks about plaintiff, was not sufficiently severe to create a claim of age-based discrimination). In *Kaniff*, retirement was suggested to spare Kaniff the embarrassment of being terminated for dishonesty; in Mr. Pitasi's case, retirement was suggested, not because of any wrongdoing on his part but as an option, a benefit to make more palatable his dismissal during a reduction-in-force. Mr. Pitasi does not claim that the company

made repeated references to urge him into retirement; we have noted that such reiterated comments may be considered by a jury to infer discrimination because they "may reflect the employer's intention to rid itself of older workers by subtly pressuring them into retiring." *Id.*[6]

In this case, one comment was made to Mr. Pitasi in light of the RIF; that suggestion, standing by itself, does not create an inference of age-based discrimination. *See Greenberg v. Union Camp Corp.*, 48 F.3d 22, 29 (1st Cir.1995) (finding that a single question about retirement plans does not necessarily show age-related animus); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1395 (6th Cir.1993) (concluding that the suggestions of shareholders that the plaintiff retire are not alone sufficiently indicative of discrimination).[7] Moreover, just as the plaintiff in *Kaniff* was further required to show that the identified acts of dishonesty were a pretextual reason for firing him, so too Mr. Pitasi is required to show that the identified RIF was a pretextual justification for his firing.

**B. Indirect Proof Method of Age Discrimination**

■ Mr. Pitasi does indeed offer evidence that Gartner's claimed RIF was a

6. *See also Greenberg v. Union Camp Corp.*, 48 F.3d 22, 28–29 (1st Cir.1995) (concluding that repeated or coercive inquiries by an employer about an employee's retirement plans can give rise to a reasonable inference of anti-age bias but that a single inquiry does not necessarily show animosity toward age); *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 514 (6th Cir.1991) (finding no age discrimination when the supervisor encouraged plaintiff to take early retirement before firing him, and requiring evidence that the supervisor "took active steps to push [plaintiff] toward retirement based on an improper discriminatory motive" for a viable ADEA claim).

7. For a thoughtful discussion of the discriminatory and non-discriminatory aspects of early retirement incentives, see *Karlen v. City Colleges of Chicago*, 837 F.2d 314, 317–20 (7th Cir.), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988), which

described the early-retirement program issue as "the most difficult question under the [ADEA]" and concluded that a program that withholds benefits from employees aged 65–69 in order to induce them to retire is age discrimination. The ADEA excludes voluntary early retirement incentives from its coverage—as long as they are "not a subterfuge to evade the purposes" of the ADEA. 29 U.S.C. § 623(f)(2)(B)(ii); 29 C.F.R. § 1625.9. We have made clear that neither retirement nor offers of early-retirement incentives support an inference of age discrimination and that it is the conditions surrounding the offer, rather than the offer of early retirement, that count in considering whether the ADEA is violated. *See Henn v. National Geographic Soc'y*, 819 F.2d 824, 828–29 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

pretext for Mr. Pitasi's firing. He submits that, in spite of Gartner's claim that it had to reduce the work force after the Dataquest acquisition, Gartner in fact hired Robert Egan, 11 years younger than Mr. Pitasi, to begin work on a job similar to Mr. Pitasi's in the same research section on the same day Pitasi was fired. Mr. Pitasi insists that Egan was hired as his replacement and that Cooperman and McGee were simply given parts of Mr. Pitasi's job.

Under the indirect method of proving age discrimination, a plaintiff first must set forth, by a preponderance of the evidence, a prima facie case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff establishes a prima facie case by demonstrating that: "(1) he was in the protected age group; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably." *Biolchini v. General Elec. Co.,* 167 F.3d 1151, 1153–54 (7th Cir.1999) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). "In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 313, 116 S.Ct. 1307; *see also Scott v. Parkview Mem. Hosp.,* 175 F.3d 523, 525 (7th Cir.1999) (concluding that the age differences of those who passed the interviews, 32–46, compared to those who failed, 42–48, were too slight to raise an inference of discrimination).

If the plaintiff satisfies the burden of proving a prima facie case, "a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff." *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 394 (7th Cir.1998) (quoting *Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 302–03 (7th Cir.1996) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981))). If the defendant meets this requirement, the plaintiff employee then must show that the employer's proffered reason is pretextual. "[T]he ultimate burden remains with the plaintiff-employee to persuade the trier of fact that the defendant-employer intentionally discriminated against him based upon his age." *Id.* (citing *Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 864 (7th Cir.1996); *Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 681 (7th Cir.1996)).

Mr. Pitasi submits that he has properly stated a prima facie case under the indirect method: He was in the protected over–40 age group, was performing to his employer's legitimate expectations, and was discharged. He claims, as well, that he demonstrated that younger employees were treated more favorably. However, Gartner challenges his proof on this fourth prong. The district court held that Mr. Pitasi was unable to establish this last part of the prima facie case, and we agree.

First, Mr. Pitasi has not shown by a preponderance of the evidence that Egan, 11 years his junior, took over Mr. Pitasi's position. It is evident from the record that Mr. Pitasi was not replaced by Robert Egan. Egan was hired in October 1995 to fill a vacancy that had existed in Wireless Communications for several months. It is true that he began work at Gartner on January 3, 1996, but his starting date was unrelated to Mr. Pitasi's termination.[8]

---

8. Egan set his starting date of January 1996

when he was hired in October 1995. Mr.

Mr. Pitasi never held Egan's position in Wireless Communications, and, according to Schumer, his knowledge was not deep enough in that area to be useful to clients. Moreover, Mr. Pitasi has offered no evidence that Egan was his replacement or that Egan's hiring was related to Mr. Pitasi's termination. *See, e.g., Janiuk v. TCG/Trump Co.,* 157 F.3d 504, 509 (7th Cir. 1998) (finding evidence from which a reasonable jury could conclude that a substantially younger employee replaced the plaintiff). Indeed, as the district court recognized, Mr. Pitasi admitted in his Rule 12(N) Statement that Cooperman took over his position of Core Topic Leader and that McGee was assigned the Research Integrator position. We agree with the district court that Mr. Pitasi therefore has failed to raise a genuine issue of fact that he was replaced by Egan.

The record also clearly demonstrates that Gartner was in fact reducing its work force and, therefore, that Mr. Pitasi was not replaced at all; instead, his duties were divided by two existing employees, Jerome Cooperman (4 months older) and Ken McGee (8 years younger). The disparity in age between Mr. Pitasi and the two who took over his position is not significant enough, under the law of this circuit, to create a reasonable inference of age discrimination. *See Scott,* 175 F.3d at 525 (stating that an "inference of discrimination is appropriate only when the employer favors 'substantially' younger persons, a term we have defined operationally as 'ten years or more'"); *Hartley v. Wisconsin Bell, Inc.,* 124 F.3d 887, 893 (7th Cir.1997) (stating that a 10-year age disparity is presumptively significant). Nor is there evidence in the record suggesting that anyone at Gartner considered Mr. Pitasi's age even to be a consideration.

Finally, the record reflects that Mr. Pitasi failed to identify any younger, equally situated individuals who were retained by

Gartner. Mr. Pitasi acknowledged that, when Gartner acquired Dataquest, redundancies were created in the marketing and human resources areas, but asserted that there were no redundancies in the Research Advisory Services of which he was a part. He submits that, of the 205 research analysts, the only two to be discharged as redundant were in the age-protected zone: He was 52, and the other researcher was 40. However, he does not compare his circumstances with those of younger individuals who stayed at Gartner. He has not offered any evidence to show that the other analysts who were retained were "similarly situated" to him—in fact, he even asserted that their knowledge, duties, number of clients and salary were lower than his. *See Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1398 (7th Cir.1997) (pointing out that employees who take parts of a job vacated by the fired plaintiff are not similarly situated and concluding that plaintiff failed to show that a similarly situated employee in the protected category was retained). Nor has he demonstrated that Gartner's preference to hire analysts right out of college was linked in any way to Gartner's decision to terminate his employment. *See Fuka v. Thomson Consumer Elecs.,* 82 F.3d 1397, 1403–04 (7th Cir.1996) (no nexus shown between remarks of superior and decision-maker's subsequent termination decision). We conclude, as did the district court, that Mr. Pitasi failed to establish the fourth prong of his prima facie case.

■ Mr. Pitasi's final claim is that Gartner offered groundless excuses to fire him. He insists that it is not true that his knowledge in some areas was not as deep as it should be, that he was dissatisfied with his job, or that his position was redundant after the Dataquest acquisition. This argument overlaps with Mr. Pitasi's assertion that the reasons Gartner offered for terminating his position—(1) that the

Pitasi remained with Gartner until January 1996 by his own request, in order to take

advantage of the vesting of his stock options.

RIF required his dismissal, (2) that Pitasi had stated his dissatisfaction with his job, and (3) that he had a limited ability to service the contributor areas—were pretextual.

Mr. Pitasi does not deny, however, that Schumer evaluated the skills of the research analysts he supervised, as was required after the Dataquest acquisition, and determined which employees had broader or deeper abilities and could assume the duties of other employees. Although Mr. Pitasi, in conclusory fashion, asserts that his knowledge and analytical abilities were sufficiently deep in the contributing areas, see *Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1154 (7th Cir. 1999) (requiring record evidence other than plaintiff's conclusory statement that he was more qualified to perform functions outside his main duties than the employee who assumed his duties), he does not challenge Schumer's supervisory responsibility of assessing the skills of his employees and, in a RIF situation, determining which employee to discharge. See *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir.1999) (concluding that employers may, without violating anti-discrimination laws, make subjective assessments concerning which employees could assume the responsibilities of those who were discharged). Such decisionmaking by an employer— even if it exhibits poor business judgment or is erroneous—is not sufficient to establish pretext. See *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999). Therefore it is not sufficient for the employee to show that his employer fired him for incorrect or poorly considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him. See *Adreani*, 154 F.3d at 395.

In this case, we note first that our case law reflects that the reasons given by Gartner for dismissing Mr. Pitasi were legitimate and nondiscriminatory. *See, e.g., Jackson*, 176 F.3d at 983 (concluding that dismissing plaintiff because his skills were redundant with those of others who had broader skills than plaintiff is a legitimate reason for discharge); *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920–21 (7th Cir.) (approving employer's decision to choose to terminate employee it believed to be dissatisfied with his job), *cert. denied*, 519 U.S. 866, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996). The burden therefore would shift back to Mr. Pitasi to show that each proffered nondiscriminatory reason was pretextual. He would be required to establish that the employer did not honestly believe the reasons it gave for terminating him, see *Adreani*, 154 F.3d at 395, and that age tipped the balance in favor of discharge, see *Wilson v. AM General Corp.*, 167 F.3d 1114, 1120 (7th Cir.1999). The record is utterly devoid of such evidence. Mr. Pitasi has presented no evidence that Gartner's articulated reasons for discharging him were not honestly believed and genuine. *See Adreani*, 154 F.3d at 398. Nor has he shown that Schumer was motivated by reasons other than those proffered, namely illegal age-based discriminatory reasons. *See Biolchini*, 167 F.3d at 1155. "Of course if the reason [the plaintiff] isn't replaced is that he isn't needed, and if that rather than his race or national origin or other protected status is the reason he was fired, he has no claim." *Wallace*, 103 F.3d at 1398. We conclude that Mr. Pitasi has no claim.

### Conclusion

Mr. Pitasi has failed to demonstrate that age discrimination played any part in his employer's decision to terminate his employment in order to effect a reduction in force. Accordingly, we affirm the district court's grant of summary judgment to Gartner.

AFFIRMED.