Sylvia ADAMS, Plaintiff–Appellant,

v.

CBS BROADCASTING, INCORPORATED, Defendant–Appellee.

No. 02–3377.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 2003.

Decided March 14, 2003.

---

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

### ORDER

Sylvia Adams accepted a full-time job as a technician in June 1998 at WBBM–TV, a Chicago station owned by CBS Broadcasting, Inc. Nearly a year later, Adams, who is African–American, says she discovered that WBBM was paying white male technicians more than her. She filed suit in the district court alleging race and sex discrimination in violation of several civil rights statutes. The court granted CBS' motion for summary judgment because, it held, Adams' claims were time-barred and, alternatively, because she failed to establish a *prima facie* case of discrimination. Adams timely appealed, and we affirm.

The following facts are culled from the parties' statements of undisputed facts and responses. Adams has held numerous part-time positions with various television networks and studios since 1988. She began working as a freelance technician for CBS' sports and news divisions in 1994. A few years later she also began working part-time for another CBS division, WBBM, primarily as a technician during football broadcasts. Impressed with her work, WBBM in 1998 offered her a full-time technician position, which Adams accepted.

WBBM technicians are represented by a union, and their wages are governed by a collective bargaining agreement ("CBA"). The CBA sets the minimum wage that must be paid to technicians, though WBBM was free to pay wages higher than the required minimum. Under the CBA, minimum wages are based solely upon the amount of time an employee has worked for CBS; work performed elsewhere is not credited. But in order to recruit the best possible candidates, WBBM sometimes gives credit for non-CBS work or pays more than the minimum required by the CBA.

When Adams was hired full-time in 1998, she had worked part-time cumulatively for CBS Sports, CBS News, and

WBBM a total of 1,781 hours—roughly equivalent to one year's work as a full-time employee. Normally an employee with one year's work with CBS is hired at the lowest of five wage tiers. But WBBM liked Adams' positive attitude and the hard work she had done during its football broadcasts, so it offered her the third-tier wage, the minimum for employees with 2–3 years of CBS experience.

Adams first suspected that she was being underpaid nearly a year later. In March 1999 she says co-workers told her that she should have been credited for her non-CBS experience and so should be earning top-tier wages. Adams made inquiries to a supervisor, who told her that no one was hired at the top-tier wage except photographers. Dissatisfied with that response, Adams filed a grievance with her union. (The grievance is not in the record, nor is evidence of how the grievance was resolved).

She subsequently filed charges with the EEOC, and after receiving a right-to-sue letter, filed suit in the district court alleging sex and race discrimination in violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. § 1981, and the Equal Pay Act, 29 U.S.C. § 206(d)(1). Adams eventually dropped her Equal Pay Act and sex discrimination claims, leaving only her claims of race discrimination under Title VII and 42 U.S.C. § 1981.

The district court granted summary judgment to CBS on alternative bases. First, it held that Adams' claims were untimely because she missed the 300–day deadline for filing an EEOC charge under Title VII, and the two-year deadline for suing under 42 U.S.C. § 1981. Second, the court held that Adams failed to establish that she qualified for a higher wage under the CBA or that similarly situated white employees were treated better, and therefore failed to establish a *prima facie*

case under the indirect method of proving discrimination under Title VII or § 1981. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Grayson v. O'Neill,* 308 F.3d 808, 817–18 (7th Cir.2002).

Adams does not dispute that her § 1981 claim was untimely, and argues only that the district court wrongly granted summary judgment on her Title VII claim. This court reviews a grant of summary judgment *de novo,* reviewing the record in the light most favorable to the nonmoving party. *Grayson v. City of Chicago,* 317 F.3d 745, 749 (7th Cir.2003).

■ Adams first argues that the district court erred in specifying the date she was hired—June 29, 1998—as the date her claim accrued. The court concluded that by waiting 500 days to file her EEOC charge in December 1999, her charge was untimely. Adams argues that the district court's calculation is wrong because her claim did not accrue until sometime in March 1999, when coworkers first told her that she was being underpaid. Determining the proper accrual date is critical because Adams' EEOC charge was timely in December 1999 only if, as Adams argues, her claim did not accrue until March 1999.

The so-called discovery rule postpones the triggering of a limitations period from the date of injury to the date a plaintiff should reasonably have discovered the injury. *Clark v. City of Braidwood,* 318 F.3d 764, 767 (7th Cir.2003); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir.1990). The district court concluded that the discovery rule did not postpone the date on which Adams' claim accrued because she knew when she was hired that 1) some technicians were paid more than her; 2) the CBA set minimum wages based upon years of CBS experience, and 3) Adams knew how many years of experience—with CBS or otherwise—she had accumulated. The court concluded that co-

workers' statements in March 1999 that Adams should be earning more based upon her experience revealed nothing new because 1) one employee's opinion about what another employee should be paid is not relevant to WBBM's motives in setting Adams' wage, and 2) Adams knew when she was hired how her wage was calculated and should have known at the time whether the calculation was wrong.

Adams argues that the district court interpreted her coworkers' statements too narrowly. Coworkers did not tell her only that her wage was calculated improperly, she maintains, but also that her wage was calculated differently—less favorably than other technicians at her same level of experience.

We agree with Adams that the district court should have applied the discovery rule, and that she filed her charge within Title VII's 300–day limit. Adams could not have known on the day she was hired that she was being paid less than other employees with the same level of experience. To the contrary, she could have reasonably believed just the opposite after WBBM offered her a salary higher than she was entitled to under the CBA. She would not have suspected that better paid technicians had no more experience than she had until coworkers told her in March 1999 that she was underpaid. Therefore, her claim accrued in March 1999, and her EEOC charge was filed no more than 294 days later.

We turn now to Adams' attempt to establish a *prima facie* case of discrimination under the indirect, burden-shifting approach set forth in *McDonnell Douglas*. *McDonnell Douglas*, 411 U.S. at 802. Under that approach, a plaintiff establishes a *prima facie* case by demonstrating that 1) the plaintiff was a member of a protected class; 2) was qualified for the job in question (or as the district court applied it, the wage in question); 3) suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated more favorably. *See, e.g., O'Neill,* 308 F.3d at 817–18; *Lalvani v. Cook Co.,* 269 F.3d 785, 789 (7th Cir.2001).

Although neither the Supreme Court nor this court has articulated how the standard four-part *McDonnell Douglas* analysis should be tailored to wage discrimination claims, *Ghosh v. Indiana Dep't of Environ. Mgt.,* 192 F.3d 1087, 1094 (7th Cir.1999), we have held that under the fourth prong Adams must at least show that similarly situated employees outside the protected class were paid more. *Johnson v. Univ. of Wisconsin–Eau Claire,* 70 F.3d 469, 478 (7th Cir.1995). To satisfy this prong, Adams needed to demonstrate that better paid technicians outside the protected class were similarly situated, *Johnson,* 70 F.3d at 478, in that they had similar experience, qualifications, and duties. *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir.2002) (citing *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 618 (7th Cir.2000)); *Pitasi v. Gartner Group, Inc.,* 184 F.3d 709, 717 (7th Cir.1999). The district court concluded that Adams failed to establish this prong.

In her appellate brief Adams identifies no technicians whom she claims were similarly situated to her. Instead, she relies upon a chart, which she says demonstrates that nonwhite WBBM employees generally earn less than white employees. The chart does not, however, identify whether any employee is similarly situated to Adams. Although it lists the names of some WBBM employees, their race, sex, and weekly salary, it does not identify the position held or duties performed. The chart suffers another infirmity: it is unauthenticated. Adams says the chart was compiled by a union representative, but the representative did not verify that the chart is accurate or complete. *See, e.g.,*

*Woods v. City of Chicago,* 234 F.3d 979, 987–88 (7th Cir.2000) (summary judgment exhibits must be admissible and authenticated). The accuracy of the chart is dubious even on its face; Adams' years of experience is listed as being five even though she admits that she was entitled to be credited with just one.

At oral argument, Adams' counsel identified two other WBBM employees whom he argued were similarly situated but paid more (Adams had made this argument before the district court but abandoned it in her appellate brief). Each of these employees has 16 years' more experience working at WBBM than Adams, however, and so they are not similarly situated. The district court correctly concluded that Adams cannot establish a *prima facie* case of discrimination.

Accordingly, we AFFIRM the judgment of the district court.