**James L. HOGG, Plaintiff,**

v.

**FRASER SHIPYARDS, INC., Defendant.**

No. 05–C–253–C.

United States District Court, W.D. Wisconsin.

Jan. 10, 2006.

Kenneth A. Knudson, Hendricks, Knudson, Gee, Torvinen & Weiby, S.C., Superior, WI, for Plaintiff.

John G. Pawley, Reinhart, Boerner, Van Deuren, Milwaukee, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiff James Hogg contends that defendant Fraser Shipyards, Inc. terminated his job in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). Jurisdiction is present under 28 U.S.C. § 1331.

The case is before the court on defendant's motion for summary judgment. Although plaintiff has established a *prima facie* case under the *McDonnell Douglas* burden-shifting method of proof, defendant is entitled to summary judgment because plaintiff has produced no direct evidence that he was terminated because of his age and no evidence from which a reasonable jury could infer that defendant's stated reasons for his termination were pretextual.

As a preliminary matter, I note that plaintiff responded to a number of defendant's proposed findings of fact by alleging that defendant has withheld relevant discovery documents. Plaintiff raises these arguments in his brief as well, and invites the court to delay ruling on defendant's motion for summary judgment until further discovery has been conducted. In the preliminary pretrial conference order issued on May 18, 2005, the magistrate judge directed the parties to "undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines" and to "file discovery motions promptly if self-help fails." Order dated May 18, 2005, dkt. # 7, at 4–5. Further, they were advised that "parties who fail [to file discovery motions] may not seek to change the schedule on the ground that discovery proceeded to slowly to meet the deadlines" imposed by the court. *Id.* at 5. If plaintiff believed that defendant was not forthcoming in producing discoverable documents, his remedy was to file a timely discovery motion. He did not do so. Therefore, where plaintiff has attempted to place facts into dispute solely by alleging discovery violations, the proposed facts will be treated as undisputed.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff James Hogg was born in Scotland on December 29, 1939. He attended the University of Glasgow and received a certificate in naval architecture and engineering science. As part of his training, plaintiff completed an apprenticeship.

From November 1969 until May 1975, plaintiff worked as a "structural hull scientific design engineer" at American Shipbuilding in Lorain, Ohio. In May 1975, defendant hired plaintiff to serve as its senior hull engineer.

Defendant Fraser Shipyards, Inc. is a shipyard located on the western end of Lake Superior in Superior, Wisconsin. Defendant has been in business for 115 years under various owners. Defendant offers a broad range of repair services to keep Great Lakes freighters, cement vessels, tugs and barges operating properly.

B. *The Great Lakes Shipping Industry*

The shipping industry is by nature cyclical, resulting in fluctuations in the volume of business. Defendant performs most of its vessel repair work from mid-January to mid-March, when ships on the Great Lakes are nonoperational. The number of seasonal workers defendant hires each winter varies from year to year depending on the volume of business, but has decreased over time. Forty years ago, as many as 600 workers would be hired each winter. Now, the number of winter workers varies between 100 and 150. In the summer, defendant employs approximately 45–50 employees. The average age of defendant's employees is 53.

For many years, modifications of existing Great Lakes vessels were the mainstay of defendant's business. However, by the early 1990s, most existing vessels had been modified. At some point, defendant decreased its production staff and supervisors, eliminating a shipyard superintendent's assistant position and decreasing the number of foremen through layoffs and retirement. Defendant's mechanical engineer was placed on reduced hours and eventually relocated.

During the same period, the repair and maintenance schedule on the Great Lakes was reduced to two or three months from the previous four month schedule, placing an increased burden on the shipyard superintendent. As a result, in early 2003, defendant began to consider restructuring job positions to meet its business needs. Defendant determined that it needed to add a new position to assist the shipyard superintendent, but could not afford to do so and still maintain plaintiff's senior hull engineer position.

During the time plaintiff was employed by defendant, he noticed a downturn in the shipping business in 1982. Since that time there have been "ups and downs."

C. *Plaintiff's Job Performance*

In May 1975, when plaintiff was hired to serve as senior hull engineer, business on the Great Lakes was thriving. From the time he was hired in 1975 to his termination in 2003, plaintiff was the only senior hull engineer employed by defendant. Plaintiff had no employment contract and served as an employee at will.

As senior hull engineer, plaintiff's primary job duties included designing and detailing drawings for ship repairs, conversions, lengthenings and shortenings. He also performed some surveying and assisted in making steel weight estimates. Plaintiff served as quality control manager, insuring that welders' qualifications were current, creating new welding procedures when necessary, keeping records of necessary boiler work. In addition, plaintiff performed welding procedures for class one piping modifications.

Plaintiff worked with the shipyard superintendent in several capacities. He assessed steel availability from damage surveys conducted by the yard superintendent and other employees. He and the yard superintendent reviewed emergency repair procedures when vessels came into the shipyard for casualty work and he assisted the yard superintendent in interpreting

foreign vessel drawings, which relied upon metric measurements. Two or three times during plaintiff's employment with defendant, he assisted the shipyard superintendent with plant maintenance projects, making layouts for machinery in the shipyard's punch shed, pipe shop and mold loft.

During plaintiff's last eight years of employment, he produced drawings at approximately the same rate each year. On occasion, plaintiff did not have enough work to keep himself busy.

During plaintiff's employment, defendant never performed any formal or informal employee review of plaintiff's job performance. Plaintiff received annual raises from defendant and believed these were an indication of the company's satisfaction with his job performance. Plaintiff's immediate supervisor was defendant's vice-president and general manager, Trevor White. According to White, plaintiff was competent, efficient, helpful, good-natured, likable and friendly. White had no complaints relating to plaintiff's job performance. Similarly, Troy Johnson, Chairman of the Board and Chief Executive of Fraser Shipyards, considered plaintiff a good and competent employee. White stated, "Jim Hogg provided a fine service and was a fine employee."

### D. Termination of Plaintiff's Employment

In February 2003, defendant received an unsolicited resume from John Boutin, a hull engineer and vessel manager who had worked for U.S.S. Great Lakes Fleet, Inc. from 1979 until his resignation in February 2003. In the spring of 2003, Boutin was either 55 or 56 years old. In his past employment, Boutin had worked extensively with shipyard superintendents on vessel repair projects. He had previously designed, budgeted and supervised the repair, maintenance and upgrading of a fleet of Great Lakes' bulk carriers.

The community of Great Lakes shipyards and engineers is small. People within the community know each other personally and by reputation. Boutin and plaintiff have known each other since 1979 and worked with each other every winter on an almost daily basis. Boutin regarded plaintiff as a friend and respected plaintiff's opinion on vessel repairs.

In March or April of 2003, Boutin contacted defendant to follow up on his resume submission. Boutin spoke with White, who told him that there was a possibility that plaintiff would retire and a position would be opening. Defendant informed Boutin that it was "looking to fill" the position of assistant to the shipyard superintendent.

In April 2003, after hearing from another employee that plaintiff was contemplating retirement, White asked plaintiff when he was planning to retire. Plaintiff told White he planned to work until March 2006.

Around April 2003, Todd Johnson (the son of Troy Johnson and an employee of the company that owns Fraser Shipyards) contacted Jeff Thompson, the owner of Innovations in Quality Consulting. Thompson's background is in human resource management and industrial psychology. Todd Johnson told Thompson to expect a call from either White or Troy Johnson asking for advice "on some employment action they wanted to take."

Subsequently, Thompson met twice with White and Troy Johnson. Thompson took no notes at either meeting. During Thompson's first meeting with White and Troy Johnson, he advised them about the Age Discrimination in Employment Act and its provisions. White described the new "project engineer" position to Thompson. Thompson informed them that under the Age Discrimination Act, it was his

understanding that the job for which they were hiring a new person had to be different from plaintiff's job.

Following their first meeting with Thompson, White and Troy Johnson created a written job description for its new "project engineer" position. The job description included some of the duties plaintiff had performed as hull engineer, such as quality control management. However, these duties amounted to only 25% of the job. In addition, the duties of project engineer included assisting the shipyard superintendent in vessel repair projects and plant maintenance projects and working with owners, classification societies, the United States Coast Guard and other shipyard departments on all contract and repair activities.

On May 6, 2003, White and Troy Johnson told plaintiff his job was being terminated and presented him with a separation agreement. At that time, plaintiff was 63 years old. Defendant told plaintiff that a new person had been hired as project engineer. At no time did defendant discuss with plaintiff the possibility of changing his job duties or ask him whether he was willing to work more with the shipyard supervisor. When plaintiff asked if Boutin had been hired as the new engineer, he was told yes. Boutin was 55 years old.

In May 2003, Boutin again had contact with defendant. At that time, White told Boutin that plaintiff "had elected to retire." Boutin assumed that plaintiff had retired voluntarily.

On May 16, 2003, defendant issued a memo to the shipyard crew, stating that plaintiff was "to be commended for his expertise" and that he had been helpful to everyone at the shipyard, as well as to vessel owners during his employment. According to plaintiff, defendant never treated him differently because of his age or made any derogatory comments to him regarding his age.

Boutin began work as project engineer on May 19, 2003. Plaintiff overlapped his last days of work with Boutin in order to show Boutin the location of files and other data. Boutin told plaintiff that he would not have accepted the position if he had known he was taking plaintiff's job away from him.

After plaintiff's employment was terminated, Boutin had occasion to utilize drawings and other documents plaintiff had created. Boutin found them to be well done. Boutin stated, "Anything that had been done [at Fraser Shipyards], Jim probably made a drawing of it and we were using those for repeat work on ships as well as facility maintenance." Since beginning employment with defendant, Boutin reports that there has been sufficient work for him to do and that he is at times "too busy."

The only job defendant has "restructured" is the senior hull engineer position.

## OPINION

The Age Discrimination in Employment Act makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. Plaintiff contends that defendant discriminated against him when it terminated his senior hull engineer position and hired a younger person to fill the position of project engineer.

Plaintiff contends that he was treated differently from other employees because of his age. Under a disparate treatment theory, a plaintiff must prove that his age actually played a role in the

employer's decision-making process and had a determinative influence on the outcome of the employer's decision. *Balderston v. Fairbanks Morse Engine Div. of Coltec Industries*, 328 F.3d 309, 321 (7th Cir.2003). To succeed on an ADEA claim, a plaintiff must establish that he would not have been terminated "but for" his employer's intentional age-based discrimination. *Id.*

■ A plaintiff bringing a claim under the ADEA may attempt to prove his case directly or through the burden shifting method first established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Olson v. Northern FS, Inc.*, 387 F.3d 632 (7th Cir.2004). Under either method, plaintiff must prove that his age played a role in defendant's decision-making process and was determinative in the outcome. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir.2003). In other words, the question is "whether the same events would have transpired if the employee had been younger than 40 and everything else had been the same." *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir.1994). In this case, plaintiff is proceeding under the indirect method only.

■ Under the indirect method of proving unlawful discrimination, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 470 (7th Cir.2000). If a plaintiff sets forth a *prima facie* case, he is entitled to "a presumption that the employer unlawfully discriminated against the employee." *EEOC v. Our Lady of the Resurrection Medical Center*, 77 F.3d 145, 148 (7th Cir. 1996) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The burden then shifts to defendant to rebut the presump-

tion by coming forward with a legitimate nondiscriminatory reason for the discharge. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir.1999). If the defendant can do so, the plaintiff can avoid summary judgment by demonstrating that there is a genuine question of material fact regarding whether the defendant's stated reason for plaintiff's termination is pretextual. *Hudson v. Chicago Transit Authority*, 375 F.3d 552, 561 (7th Cir. 2004). Although the burden of production shifts under the indirect method, the ultimate burden of persuasion rests with the plaintiff. *Pitasi*, 184 F.3d at 716.

### A. Prima Facie Showing

■■ To establish a *prima facie* case of age discrimination under the indirect method, the plaintiff must show that (1) he was in the protected age group of 40 or older; (2) he was performing her job satisfactorily or was qualified for the job for which she applied; (3) he suffered an adverse employment action; and (4) he was replaced by a substantially younger person. *Radue*, 219 F.3d at 617; *Hartley*, 124 F.3d at 890. It is undisputed that plaintiff satisfies the first three elements of the *McDonnell Douglas* analysis. He is over forty, was performing his job to the satisfaction of his employer and his employment was terminated. However, the parties dispute whether Boutin was substantially younger than plaintiff. At the time plaintiff's employment was terminated, he was 63 years old. Boutin was either 55 or 56. Under Seventh Circuit case law, a difference of ten or more years qualifies as a "substantial difference" in age. *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir.1997). Boutin is at most eight years younger than plaintiff.

■ In cases where the age disparity between a plaintiff and the person by whom he was replaced is less than ten

years, "the plaintiff still may present a triable claim if [ ]he directs the court to evidence that h[is] employer considered h[is] age to be significant." *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d at 893 (7th Cir.1997). Although in *Hartley* the court noted that such evidence was likely to be evidence supporting an age discrimination case proceeding under a direct method of proof, the court did not exclude the possibility that a plaintiff proceeding under the indirect method of proof could demonstrate that a less than ten-year age gap was significant. The court stated, "the line we draw is not so bright as to exclude cases where the [age] gap is smaller [than ten years] but evidence nevertheless reveals the employer's decision to be motivated by the plaintiff's age." *Id.* The real question, then, is whether plaintiff has produced any evidence that his age may have been relevant to defendant's decision to terminate his employment.

Although the parties dispute the exact number of individuals qualified for the senior hull engineer position filled by plaintiff and the project engineer position filled by Boutin, they agree that there are no more than several hundred individuals in the United States qualified for either job. In February 2003, defendant became aware that Boutin was looking for employment. One to two months later, Boutin spoke with White, who told him that there was a possibility plaintiff would retire and a position would be opening for an assistant to the shipyard superintendent. At the same time or shortly thereafter, having heard from another employee that plaintiff was contemplating retirement, White asked plaintiff when he was planning to retire. Plaintiff told White he planned to work until March 2006. Two months later, defendant terminated plaintiff's employment and hired Boutin to fill the newly created project engineer position.

■ As defendant points out, an isolated question about when an employee plans to retire is insufficient to give rise to an inference of age discrimination under the direct method of proof in an ADEA claim. *Pitasi*, 184 F.3d at 715 (7th Cir.1999) (citing *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 263 (7th Cir.1997) and *Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir.1999)). Here, however, plaintiff must show only that the difference in age between plaintiff and Boutin may have been relevant to defendant's decision to terminate his employment. In support of that proposition, he relies upon more than White's question about retirement: he relies on a sequence of events from which it could be inferred that defendant's decision was based impermissibly on plaintiff's age.

■ The pool of individuals qualified for the project engineer or senior hull engineer position is undeniably small. When defendant asked plaintiff when he planned to retire, plaintiff stated that he would retire three years into the future. Nevertheless, when Boutin inquired about job openings with defendant, he was told that plaintiff might be retiring. Two months after plaintiff informed defendant of his planned retirement date, defendant terminated plaintiff's position and hired Boutin to perform a distinct, but similar, job. Although the evidence is far from conclusive, from these facts alone, a jury could infer that defendant wanted to insure that it retained a qualified engineer for the longest possible time. Moreover, a jury could infer that defendant terminated plaintiff's job and hired Boutin because plaintiff was approaching retirement. Plaintiff has presented sufficient evidence to make a *prima facie* showing that under the facts of this case, the eight-year age disparity between him and Boutin was potentially significant to defendant.

### B. *Nondiscriminatory Reason for Termination*

■ Because plaintiff has made a *prima facie* showing of discrimination, defendant must come forward with a legitimate nondiscriminatory reason for plaintiff's discharge. *Id.* at 716. Defendant says that plaintiff's position was terminated because business had diminished considerably over time and it was no longer economically feasible for the shipyard to employ a full-time senior hull engineer. (Defendant asserts that business has decreased "by 80%," though it does not say over what period and in relation to what figures.) According to defendant, as business declined, its need for designs and drawings had become "virtually non-existent." Although defendant has some ongoing need for designs and drawings, it asserts that it is no longer cost-effective to have the designs and drawings made "in house." Furthermore, defendant says that its need for plaintiff's drawings was minimal during the last eight years of his employment and that plaintiff was "kept on" in the hope that business would improve. When it did not, defendant created the project engineer position, which combined some of plaintiff's former job responsibilities with additional assistance to the shipyard superintendent.

According to defendant, it needed an individual to fill the project engineer position who could perform plaintiff's job responsibilities and who also had experience repairing vessels. Although plaintiff had worked occasionally with the shipyard superintendent, defendant considered plaintiff's primary job to be drawing and did not believe plaintiff was qualified for the new project engineer position. Boutin was available for employment and had extensive experience working with shipyard superintendents on vessel repair projects.

Defendant has provided a legitimate and lawful explanation for its termination of plaintiff's employment. Therefore, summary judgment is appropriate unless genuine questions of material fact can support a finding that defendant's proffered explanation is a pretext for age discrimination. *Hudson,* 375 F.3d at 561.

■ "If [a] company gives a reason for its decision that is unrelated to age, the plaintiff must present evidence either that the real reason was age or that the stated reason is unworthy of belief—a mere pretext, possibly of discrimination." *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994). Specifically, the plaintiff must show that the nondiscriminatory reason offered by the employer was not the real reason for the plaintiff's discharge, but is instead nothing but a cover-up for discrimination. *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir.1996). To do this, a plaintiff may present evidence showing that "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Koski v. Standex Intern. Corp.,* 307 F.3d 672, 677 (7th Cir. 2002).

In support of his contention that defendant's reasons for terminating the senior hull engineer position were pretextual, plaintiff argues that there was no downturn in the industry; that he was qualified for and willing to carry out the new responsibilities of the project engineer position; and that defendant did not create a written description of the project engineer position until it consulted with Thompson and was informed of the ADEA's provisions. However, even if each of these statements were found to be true, plaintiff has not called into question the legitimacy

of defendant's proffered reason for terminating his position.

 Although plaintiff hotly disputes defendant's allegation that the shipping industry had "declined" in recent years, the state of the industry as a whole is not material to plaintiff's case. In *Kralman*, the Court of Appeals for the Seventh Circuit noted that "that there is a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake or a bad business judgment." *Id.* The court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988). "To show that an employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the employer made a mistake ... Instead, the plaintiff must demonstrate the employer's reason is unworthy of belief." *Koski v. Standex Int'l Corp.,* 307 F.3d 672, 677 (7th Cir.2002); *see also Davis v. Con–Way Transportation Central Express, Inc.,* 368 F.3d 776, 784 (7th Cir.2004) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.") (citation omitted); *Ghosh v. Indiana Dept. of Environmental Management,* 192 F.3d 1087, 1091 (7th Cir.1999) ("Pretext is established if the plaintiff can show that the defendant's proffered reasons are either lies or completely lacking in factual basis."). So long as the employer provides an honest explanation of its behavior, the ADEA does not protect workers against bad managerial decisions.

The facts show that while defendant had once employed an assistant to the shipyard superintendent, the position had been eliminated. From the beginning of its conversations with Boutin in the spring of 2003, defendant told Boutin it was "looking to fill" the position of assistant to the shipyard superintendent, not the position of senior hull engineer. The project engineer position for which Boutin was hired combined the responsibilities of the senior hull engineer position with the additional duty of providing assistance to the shipyard superintendent. Boutin had extensive experience working on vessel repairs with a shipyard superintendent and as a senior hull engineer.

 Plaintiff asserts that defendant did not need to eliminate his position, that he was willing to provide assistance to the shipyard superintendent and that he was qualified to do so. Plaintiff may be right. However, plaintiff's qualification for and interest in a new position is not relevant to his claim that his job was terminated because of his age. As long as defendant had a legitimate reason for terminating plaintiff's position, defendant was free to hire whomever it wished as project engineer.

 Plaintiff was an employee at will. Although he may have been able to carry out the responsibilities of the new job as well or better than Boutin, defendant was not obligated to continue his employment. He could be terminated legally for any reason, good or bad, reasonable or not, so long as the reason was not his age. *Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 271 (7th Cir.1993).

Next, plaintiff contends that the timing of defendant's creation of a written job description and defendant's consultation with employment specialist Jeff Thompson would permit a jury to draw an inference that defendant lied about its reasons for terminating plaintiff's employment. Plaintiff contends that the project engineer position was created as a cover for defendant's allegedly discriminatory plan to fire

him and that defendant's failure to produce a written job description until after its consultation with Thompson is evidence of its intent to cover its tracks in anticipation of future litigation. However, plaintiff admits that the project engineer was required to perform duties on a regular basis that the senior hull engineer performed only informally and irregularly. Because it is undisputed that the jobs were different, it is irrelevant that the differences were not recorded before defendant hired Boutin.

 Plaintiff's only remaining evidence is the sequence of events upon which plaintiff relied in establishing his *prima facie* case. Although *on their face* the facts permit an inference that defendant "replaced" plaintiff with the younger Boutin, they are insufficient to rebut defendant's explanation for its termination of plaintiff's job. Plaintiff wants the court "to infer from the circumstantial evidence that a seemingly legitimate business decision was based on discriminatory motive." *Michas v. Health Cost Controls of Illinois, Inc.,* 209 F.3d 687, 695 (7th Cir.2000). However, plaintiff has presented no evidence of discriminatory animus or any evidence that would tend to disprove defendant's explanation that it wanted to combine the senior hull engineer position with the job of assistant to the shipyard superintendent. Plaintiff does not deny that the project engineer position differed from the senior hull engineer position or that Boutin was qualified for the new position. Although plaintiff believes himself to have been equally or better qualified for the job, defendant's failure to offer him the position would not permit a jury to draw an inference that defendant's explanation for its decision to terminate him was pretextual. Because plaintiff has not presented evidence rebutting defendant's legitimate, nondiscriminatory explanation for his ter-

mination, defendant's motion for summary judgment will be granted.

### ORDER

IT IS ORDERED THAT defendant's motion for summary judgment is GRANTED.